432 A.2d 1078

**COMMONWEALTH of Pennsylvania**

v.

**Jerry POTOSNAK, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed July 24, 1981.

</div>

116

George G. Mahfood, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and JOHNSON, JJ.

JOHNSON, Judge:

This is a direct appeal from the Order denying Appellant's Motion to Quash Information on grounds of double jeopardy. After a complete review of the record and argument advanced by Appellant, we affirm.

Appellant was charged with Burglary,[1] Criminal Attempt,[2] Rape,[3] Indecent Assault,[4] Aggravated Assault[5] and Involuntary Deviate Sexual Intercourse.[6] Pursuant to a plea agreement, Appellant pled guilty to each of the foregoing charges, with the sole exception of Rape. The trial judge accepted the plea. The plea agreement provided that, in return for the guilty plea, the prosecutor would move for the dismissal of the Rape charge and would make no recommendation as to sentencing.

At the time set for sentencing, but prior to the imposition of sentence, Appellant learned of the existence of a sentence recommendation in the pre-sentence report[7] attributed to the prosecutor. The trial judge remarked that he could not be certain of the impact of the sentence recommendation on his decision to incarcerate the Appellant for some length of time. The trial judge suggested Appellant take his plea before another judge for imposition of sentence; however, Appellant refused this offer. Appellant then withdrew his plea of guilty. Thereafter, the Commonwealth successfully moved to have the Rape charge reinstated.

Appellant filed a timely Motion to Quash Information, on a theory of double jeopardy, alleging that because prosecutorial misconduct had forced Appellant to withdraw his plea,

1. 18 Pa.C.S.A. § 3502.

2. *Id.*, § 901.

3. *Id.*, § 3121.

4. *Id.*, § 3126.

5. *Id.*, § 2702.

6. *Id.*, § 3123.

7. The pre-sentence report, dated February 23, 1979, at p. 2, under the heading of *Statement of the Assistant District Attorney*, states: "Assistant District Attorney Tom Corbett said that because the defendant willfully broke into the victim's home, violently assaulted her, and even made the victim masturbate him into sexual excitement, he feels that the defendant is a sick individual who, in spite of his lack of a prior criminal record, deserves a prison sentence."

the Commonwealth was precluded from bringing Appellant to trial. Hearings were conducted on Appellant's Motion.[8]

The sole issue before that court was whether the prosecutor made a recommendation in violation of the plea agreement, thus unfairly denying Appellant the benefit of the agreement. As a result of those hearings, an Order was entered denying Appellant's Motion to Quash Information. This appeal followed.

■ Absent some abuse of discretion in resolving the inconsistencies in the testimony, a reviewing court will not disturb the fact finder's determination. *Commonwealth v. Johnson*, 263 Pa.Super. 512, 398 A.2d 694 (1979).

Appellant's central allegation is that the prosecutor never denied making the statement in question and, therefore, the court abused its discretion in finding that the prosecution had not intentionally breached the plea agreement. We cannot agree.

This assertion on its face is contradicted by the record. On direct examination, the assistant district attorney involved in the plea bargain testified as follows:

"Q. Do you recall speaking to Mr. Ward, the Probation Officer, on this?

"A. I do recall having a conversation with him, yes.

"Q. In that conversation, do you recall discussing any recommendation as to sentence?

"A. The conversation was a short one. It was, I believe, one afternoon. Great details of the conversation, no, I don't have a detailed recollection of it. It was, as I said, very short, less than five minutes. I referred to, and I keep with me, a log of every case I tried since I came back from being an area Prosecutor, and I referred to that and told him—the one thing that stuck in my mind is, I told him it was a no recommendation plea. I do not believe at any point I told him, as is put in the report, that

8. The hearings were conducted before a different judge than the judge who initially accepted Appellant's plea and who later declined to impose sentence after learning of the alleged breach of the plea agreement.

the man deserves incarceration, because of the fact I knew it was a no recommendation plea.

"Q. When did you first have an opportunity to see this pre-sentence report that was prepared?

"A. When Mr. McClenahan brought it to my attention the day of sentencing.

"Q. You did not have time, prior to this, to make any corrections or additions?

"A. No, I didn't." [9]

Additionally, on cross examination, the assistant district attorney testified "I did advise him to contact the victim, because I couldn't say anything." [10]

The probation officer who prepared the presentencing report testified as the court's witness. He had no recollection of the exact phone conversation when the opinion of the prosecutor was solicited. His strongest support for the accuracy of the statement attributed in the report to the prosecution was, "If I put it in the report it must have been said." [11] The probation officer further testified he prepared more than one hundred (100) reports a year, and that his notes on this particular report were no longer in existence.

In contrast, the court found the prosecutor to be a highly credible witness. The court believed testimony that the prosecutor stated to the probation officer that the District Attorney's office was making "no recommendation" for sentencing. Hence, the court could properly conclude that the presentencing report, attributing a recommendation for sentencing to the prosecutor, was erroneous. Thus, the court found no misconduct on the part of the prosecution and refused to impute the error by a probation officer to the prosecution.

Finally, the court noted it could find no prejudice to Appellant in view of the fact that Appellant had the option

9. *Transcript of Official Notes of Proceedings*, Sudie Shaffer, Official Court Reporter, May 9, 1979, at pp. 13–14.

10. *Id.*, p. 18.

11. *Id.*, p. 5.

of proceeding with the plea bargain by going before another judge with the same plea.

█ The lower court's resolution of the two witnesses' credibility in a manner unfavorable to Appellant has foreclosed any further efforts to present the testimony of the probation officer as the controlling view of the facts. The determination of credibility is uniquely in the province of the fact finder, and we do not find the lower court abused its discretion in resolving the question of credibility against Appellant. *Commonwealth v. Johnson, supra.*

Appellant argues that the double jeopardy clause of the United States Constitution [12] bars his reprosecution because of the alleged intentional prosecutorial misconduct of the Commonwealth.

█ It is well settled that the terms of a plea bargain, which serves as an inducement to a defendant to plead guilty, must be binding on the prosecution. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971), remanded, *People v. Santobello*, 39 App. Div.2d 654, 331 N.Y.S.2d 776 (1st Dept., 1972); *Commonwealth v. Landi*, 280 Pa.Super. 134, 421 A.2d 442 (1980). Therefore, the prosecutor has an affirmative duty on the part of the prosecutor to honor any and all such promises. If the Commonwealth violates a plea bargain, the defendant is entitled to the benefit of the bargain. *Commonwealth v. Landi, supra; Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976).

*Santobello, supra*, involved a breach of a plea bargain agreement by the prosecution similar to the facts of the case at hand, i. e., a recommendation being made *inadvertently* by the prosecution, despite an agreement to forego such a recommendation.

We are of the opinion that a thorough analysis of the case law in this area is appropriate, despite our determination that the lower court did not abuse its discretion by determining that there was, in fact, *no* prosecutorial misconduct in this case.

12. U.S.C.A.Const. Amend. 5.

The law concerning the effect of intentional prosecutorial misconduct on reprosecution as applied to double jeopardy is found in *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980) and in *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978). These cases state that retrial will be barred when prosecutorial misconduct arises to the level of "overreaching." Two types of overreaching have been enunciated by the United States Supreme Court. The first involves prosecutorial misconduct designed to provoke a mistrial in order to secure a more favorable opportunity to convict. *United States v. Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276. The second type is prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. *Lee v. United States*, 432 U.S. at 33, 97 S.Ct. at 2147, 53 L.Ed.2d at 89.

However, the Supreme Court of the United States has stated that "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079–80, 47 L.Ed.2d at 274, quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971) (footnote omitted), see also *Lee v. United States, supra; Commonwealth v. Starks, supra.*

■ The request for a withdrawal of Appellant's plea of guilty is analogous to the request at trial for a mistrial. Since a voluntary mistrial motion by a defendant ordinarily will not bar reprosecution, neither should a voluntary withdrawal of a guilty plea.

■ There is an applicable rule of law that is closely tied to the facts in this case: that one may not by his own *voluntary* actions seek and obtain a *reversal of judgment* and then attack a subsequent proceeding on double jeopardy

grounds. *Commonwealth v. El*, 273 Pa.Super. 1, 416 A.2d 1058 (1979). The facts in *El* were as follows: defendant requested and was granted a withdrawal of his guilty plea after he was given an unlawful sentence and then resentenced. The Commonwealth then was granted its motion to remove nolle prosses on charges eliminated as per the plea agreement. The court determined that the defendant should not be permitted to benefit further from his withdrawal of the guilty plea which was voluntary and granted for his benefit. The court then allowed reprosecution on *all* charges.

Furthermore, the court in *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980) *cert. denied, Tabb v. Pennsylvania*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981), stated that the double jeopardy clause does not protect against retrial for the same offense after conviction if the conviction was set aside through *defendant's* procurement.

The facts in *Tabb* involved a general plea of guilty to murder in return for certification by the prosecutor that the charge did not exceed third degree murder, the nolle prosses of several lesser-included charges and a recommendation of sentence. Appellant was allowed to withdraw his plea on direct appeal where judgment of sentence was reversed and a new trial granted. Appellant then sought to bar retrial on double jeopardy grounds. The Supreme Court of Pennsylvania affirmed Appellant's retrial on charges of first or second degree murder.

■ In the instant case, a distinct issue also arises as to the ability of the Commonwealth to reinstate the charge of Rape which was dismissed as part of the plea agreement. The prohibition of double jeopardy, as it relates to subsequent prosecutions, is irrelevant until jeopardy has once attached. *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787 (1980), *reh. denied*, 446 U.S. 947, 100 S.Ct. 2178, 64 L.Ed.2d 804 (1980).

In *Klobuchir*, the court stated that jeopardy attaches on the court's acceptance of the guilty plea. It qualified its determination by further stating that this attachment applies only to the charges pled to in the plea itself.

The *Klobuchir* court allowed reprosecution on *first* degree murder following the setting aside of a guilty plea to a *lesser* degree of murder. This result was affirmed on similar facts in *Commonwealth v. Newmiller*, 487 Pa. 410, 409 A.2d 834 (1979). Also, the court allowed charges nolle prossed pursuant to a plea agreement to be reinstated on withdrawal of the plea in *Commonwealth v. El, supra*.

■ In the instant case, Appellant had three options when the plea bargain was breached: continue with the bargain as breached, go before another judge with the original plea bargain, or withdraw his plea entirely.

The record shows that counsel for Appellant was aware of his options and that he made a willing and voluntary choice. At the hearing on the Motion to Quash, Appellant's plea counsel testified as follows:

"Q. Continue as to the April 10th events.

A. On April 10th, I was prepared for the sentencing and I had several witnesses including Mr. Potosnak's wife, his employer, his priest, and I had retained a psychiatrist who had reviewed the case and was prepared to testify, and I had in addition a psychologist who had examined Mr. Potosnak and prepared to testify at the time of sentencing. When I got to the room for the sentencing, I asked Joe, Judge Popovich's clerk, for a copy of the presentence report. Upon reading it I discovered that there was what was previously read, a statement of the District Attorney.

At that time, after consultation with Mr. Corbett, and with Judge Popovich, I moved to withdraw Mr. Potosnak's plea of guilty, which was accepted by the Court.

Q. Were any other alternatives discussed during the consultation with Mr. Corbett, Judge Popovich, concerning disposition of this case?

A. I am not sure what you mean.

Q. Any other alternatives, other than withdrawal of the guilty plea discussed?

A. We discussed the question of whether that section of the presentence report had influenced Judge Popovich. Judge Popovich, as I recall, stated while he could not say it did influence him, he could not say it did not influence him.

Q. Did Judge Popovich at any time offer to have the case sent to another Judge?

A. He did have, he did offer to have the case sent to another Judge. I declined to have that done.

Q. Upon what grounds did you decline? What was your basis for declining?

A. My basis was that we struck a plea bargain, that my client and I had struck a plea bargain with the Commonwealth. That plea bargain had been accepted by the Court. We did in fact plead guilty and the Commonwealth, either the Commonwealth or their agent had broken the spirit of the plea bargain and the plea bargain itself.

Q. Was there any offer to have a different or new presentence report prepared by a different Probation Officer?

A. I don't think so.

Q. Was the withdrawal of the guilty plea made upon the record in Judge Popovich's courtroom?

A. It was indeed." [13]

Appellant therefore had the option of forcing the terms of the plea bargain on the Commonwealth. If he had chosen this course of action, he could not then have argued before another judge that the charges pled to were in violation of double jeopardy. We cannot find that, by withdrawing the guilty plea and being restored to a neutral position, a different result should occur.

13. *Motion to Quash*, Dorothy Barkman, Official Court Reporter, May 2, 1979 at pp. 13–15.

Finally, it must be mentioned that the previously dismissed charge of Rape is now reinstated. Appellant was, or should have been, aware that by withdrawing the plea of guilty he was then re-exposing himself to prosecution on this count. Such was the option taken voluntarily by Appellant, and we find no prejudice to the reinstatement on these facts.

The Order, dated May 10, 1979, denying Appellant's Motion to Quash Information, is affirmed.

SPAETH, J., concurs in the result.