581 A.2d 595

**COMMONWEALTH of Pennsylvania**

v.

**James ELLIS, Appellant.**

Superior Court of Pennsylvania.

Argued March 30, 1990.

Filed Oct. 9, 1990.

540

William C. Kaczynski, Pittsburgh, for appellant.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND, McEWEN, MONTEMURO, BECK, KELLY, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is a direct appeal from a judgment of sentence entered on December 7, 1987, in the Court of Common Pleas of Allegheny County. On appeal, appellant alleges numerous trial court errors as well as claims of ineffective assistance of counsel. Following an extensive review of the record, the parties' arguments, and the applicable law, we affirm the judgment of sentence.

Appellant was arrested on November 13, 1985, and charged with one count of robbery and one count of driving while under the influence of alcohol. On September 4,

1986, appellant appeared before the Honorable Walter R. Little for a suppression hearing and an inconclusive plea. On January 6, 1987, appellant proceeded to a jury trial before the Honorable Raymond A. Novak. Appellant was convicted of the robbery charge on January 8, 1987. Post-trial motions were filed and denied. Appellant was sentenced to a term of imprisonment of five to ten years on December 7, 1987. This timely appeal followed.

The facts of this case are summarized as follows. On November 13, 1985, Mary Killer–Walker tended bar in her husband's after hours club into the early morning hours. Walker closed the bar around 3:00 a.m. and took the bar's receipts, approximately $300.00 in a Mellon Bank bag, home with her. While driving home Walker noticed a car following her. As she pulled into her driveway, the other car pulled in also, thus blocking her car. Walker leaned on her horn as a man approached her car and put what she thought was a shotgun to her window. As he yelled "give it up," Walker jumped out of her car on the passenger side and ran to her neighbor's house for help. The man took Walker's purse and left in an old, rusted burgundy Chevy. Soon thereafter, Walker described her assailant to the police as an old black man with gray hair and glasses wearing blue jeans. Walker told police that she knew that this man was the same man with whom she had had an altercation earlier that morning in the club.

Pursuant to a tip, police drove to the Uptown section of Pittsburgh with Walker's description of her assailant. While talking to another officer, the police spotted a burgundy Chevy parked at a nearby gas station. Police observed appellant chasing two youths down the street. An officer walked over to the burgundy Chevy and looked inside the car through the open door. He noticed a large purse in the lighted interior of the car with a bank bag sticking out of it. As the officer looked inside the purse, he found Walker's identification in it. Appellant approached the police claiming that the two youths had robbed him. The police asked appellant if the Chevy was his and as he

answered affirmatively, he was placed under arrest. Later, Walker identified appellant as her assailant and the purse as hers.

Before addressing the substantive issues presented on appeal, we must decide an initial procedural question: whether and under what circumstances this court will consider *pro se* briefs in criminal cases where appellant is represented by counsel on appeal. Presently, appointed counsel for appellant has filed a brief which raises seven issues for this court's review and appellant has filed a separate brief presenting four additional claims. Upon careful scrutiny, the basis for relief presented in both briefs is not dissimilar. This court's practiced *pro se* policy is as follows:

> All pro se petitions, motions, and briefs shall be filed in this Court and docketed by the Prothonotary. If the litigant himself or herself files a petition, motion, or brief and is represented by counsel, copies of the said document filed shall be forwarded to his or her counsel of record.

20 Pa.Bull. 3147 (1990) (to be codified at 210 Pa.Code Ch. 65 § 65.24).

Initially, any resolution of this procedural issue necessarily must involve an examination of the basic constitutional right of appeal and right to counsel. Historically, the United States Supreme Court held that the right to appeal from a criminal conviction was not absolute absent a state constitutional or statutory provision allowing such review. *See McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). Although the Supreme Court has broadened and defined its role of protecting constitutional guarantees over the past century by choosing to review certain state criminal convictions, the Pennsylvania Constitution always has guaranteed defendants the right of appeal. Pa. Const. art. 5 § 9 states:

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an

administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

In conjunction with the right of appeal, the Pennsylvania Constitution affords the defendant in a criminal prosecution the right to an attorney. Pa. Const. art. 1 § 9. Moreover, it is well recognized that the United States Constitution provides the same right. U.S.C. Const. Amend. 6. However, growing out of this right, the United States Supreme Court has ruled that an individual has the right to self-representation in a state criminal trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant may exercise this right if he renders an express knowing and intelligent waiver of his right to counsel. *Faretta v. California, supra.* In compliance with the Supreme Court's ruling, the Pennsylvania Rules of Criminal Procedure have embodied the policy and procedure of self-representation at the trial court level. Pa.R.Crim.P. 318; *see Commonwealth v. Davis*, 479 Pa. 274, 388 A.2d 324 (1978).

At the appellate level, we have permitted, and at times encouraged, a criminal defendant to prosecute his own case. *See Commonwealth v. Maple*, 385 Pa.Super. 14, 559 A.2d 953 (1989); *Commonwealth v. McDowell*, 220 Pa.Super. 449, 289 A.2d 245 (1972). However, the more pertinent question concerns the right of self-representation together with counseled representation at the appellate level. This circumstance is better known as "hybrid" representation. In *Commonwealth v. Williams*, 270 Pa.Super. 27, 35, 410 A.2d 880, 883 (1979), we held that "there is no right, deriving from either the United States Constitution or [the] Constitution of Pennsylvania, for a criminal defendant to proceed as co-counsel in his own defense." *See Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985) cert. denied, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *cf.* Pa.R.Crim.P. 318(d) (upon acceptance of defendant's waiver of counsel, standby counsel may be appointed to

give the defendant consultation and advice); *Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855 (1976); *Hall v. Dorsey*, 534 F.Supp. 507, 509 (E.D.Pa.1982) ("the accused has the right to be heard by himself; the accused has the right to be heard by his counsel; but not both.").

As this "hybrid" representation per se is not tolerated at the common pleas level, we see no distinction, and today would not choose to define one, which would allow for a different policy at the appellate level. Generally, when confronted with this issue in the past this court would not consider the separate briefs of counsel and appellant, but remanded the matter to the trial court to conduct a hearing in order for appellant to choose whether he wished to represent himself or remain counseled on appeal. *Commonwealth v. Kibler*, 294 Pa.Super. 30, 439 A.2d 734 (1982); *see Commonwealth v. Knapp*, 374 Pa.Super. 160, 542 A.2d 546 (1988); *Commonwealth v. Henry*, 341 Pa.Super. 146, 491 A.2d 193 (1985); *Commonwealth v. Moore*, 321 Pa.Super. 1, 467 A.2d 862 (1983).

Clearly, there are obvious problems which surface when an appellant files a *pro se* brief and counsel has filed one as well. First of all, at the heart of the right to counsel on appeal is appellant's entitlement to a professional evaluation of his case. As an officer of the court, appellant's counsel is required to present arguments to the appellate tribunal which she believes possess merit. *Smith v. Commonwealth of Pennsylvania Board of Probation and Parole*, 524 Pa. 500, 574 A.2d 558 (1990). While fulfilling her duties as an officer of the court, counsel also must meet her obligation of fidelity to her client. In doing so, counsel must present issues which have been preserved properly or perhaps be prepared to argue the viability of issues that have not been preserved due to prior counsel's ineffectiveness. If counsel is not afforded discretion as to which issues to present to the appellate court, then the attorney-client relationship is prejudiced. For example, counsel and the *pro se* could be arguing different issues to the appellate court. Thus, counsel and/or the *pro se* could be undermin-

ing appellant's success for the grant of appellate relief by asking this court to referee *their* opposing points. Moreover, counsel's defense strategy and trial tactics may prove to be fruitless if appellant files a *pro se* brief alleging appellate counsel's ineffectiveness either at trial or on appeal.

Further, under no other circumstances do we allow counsel and her client to present opposing defense arguments to this court. Even in the circumstance of permitting counsel to withdraw from her client's case, we do not allow counsel to "sandbag" her client. A proper *Anders* brief requesting withdrawal requires counsel to petition this court and state that after making a conscientious examination of the record and interviewing appellant, she has determined that the appeal is wholly frivolous. She must file a brief referring to anything in the record that arguably might support the appeal, but the brief must not resemble a no-merit letter or an *amicus curiae* brief. Finally, counsel must furnish a copy of the brief to appellant informing him of his right to raise any additional points that he deems worthy of this court's attention. *See Commonwealth v. McFarland*, 386 Pa.Super. 91, 562 A.2d 369 (1989). Clearly, even in this circumstance we permit counsel to fulfill her obligation as an officer to the court by not raising frivolous issues for appellate review, and to maintain her fidelity to her client by not presenting a brief in support of affirmance. To do anything else would only drive a wedge between counsel and client, and place counsel between the proverbial—rock and a hard place. In essence, allowing "hybrid" representation per se to occur at the appellate level promotes the possibility of an adversarial relationship developing between attorney and client where once existed a relationship built upon confidentiality and trust.

Further, the administrative burdens placed upon the court as well as the Commonwealth in addressing the *pro se*'s brief would lead to nothing other than procedural confusion and delay in the appeal process. We agree with the analysis enunciated by former President Judge Spaeth in his

Concurring and Dissenting Opinion in *Commonwealth v. Almeida*, 306 Pa.Super. 197, 215–16, 452 A.2d 512, 520–21 (1982) when he stated:

> In the opinion I wrote as a member of the panel, I said that I saw no reason not to consider appellant's *pro se* brief, adding that if we were to refuse to consider it, "most likely" appellant would file a petition for post-conviction relief alleging counsel's ineffectiveness "for failing to make the argument he tried to make in his *pro se* brief. Thus it will avoid undue procedural confusion, and also avoid delay, to address the issue presented in appellant's *pro se* brief now." Especially did I think this so since the *pro se* brief "not only does not pose any danger to appellant, but benefits him by presenting another argument on his behalf." Panel Slip op. at 16 n. 7.
>
> On reargument, the Commonwealth has persuaded me that I was wrong, and that "[t]his Court should announce that it will not consider *pro se* pleadings until these are reviewed by counsel." Brief for Commonwealth at 16. On reflection, I've concluded that the distinction between *pro se* arguments that "benefit[ ]" an appellant and those that pose "[a] danger" to him is unsound. Whatever the nature of the argument, by considering it we may, as the Commonwealth suggests, encourage other appellants to submit *pro se* briefs, which the Commonwealth "will have to decipher and respond to," thereby "creat[ing] a shadow docket of hundreds of appeals." *Id.* It is not unusual for a judge to receive a *pro se* letter or petition of some sort from a defendant. The general practice is for the judge, or the prothonotary, to refer the letter to counsel who represents the defendant. I think we should follow the same practice with respect to *pro se* briefs, leaving it to the defendant to file a petition for post-conviction relief if, after we have decided his appeal, he continues to believe that counsel should have made, and we should have responded to, the argument he made *pro se*. It may be that sometimes this will, as I suggested in my opinion as a member of the panel, unduly prolong litigation. But

on balance, I think, it will result in a more orderly and therefore more efficient administration of justice; and in most cases, at least, the defendant will not be prejudiced, for counsel will be able to consider the defendant's *pro se* argument, and if it has any merit, present it to us or the lower court in one way or another.

A little more than fifty percent of all of this court's appeals are of a criminal nature.[1] To effectuate a policy of addressing *pro se* briefs in counseled appeals would enable this "shadow docket of appeals" to take on an ominous shape. This court's institution of such a policy virtually would stymie any conviction for and practice of an efficient administration of appellate justice. In effect, such practice could cause the breakdown of the criminal appeal's process thereby resulting in painstakingly long delays and the denial of a careful appellate review for the parties. Accordingly, we will not institute nor accept such a policy and practice.

Having held so, we need to reexamine a recent decision from a panel of this court. In *Commonwealth v. Shaw*, 379 Pa.Super. 491, 550 A.2d 555 (1988), the panel believed that they had to address appellant's *pro se* arguments due to the Pennsylvania Supreme Court's *per curiam* order in *Commonwealth v. Gaerttner*, 518 Pa. 452, 543 A.2d 1091 (1988), which remanded a case to this court for consideration of the issues raised in the *pro se* brief. For the following reasons, we no longer abide by the *Shaw* principle concerning *pro se* briefs. First of all, we believe that *Gaerttner* can be limited to its facts. During his trial, defendant Gaerttner represented himself with standby counsel in the wings to offer assistance and advice when needed. Although counsel was appointed pursuant to his request for the post-trial stage, Gaerttner filed *pro se* post-trial motions. Following sentencing and the withdraw-

---

1. In 1988, 3,265 of the 6,439 new appeals filed in this court were criminal matters, generally either direct appeals from a judgment of sentence or an appeal from the denial of post-conviction relief. In 1989, the number of criminal matters comprised 3,103 of the 6,040 new appeals filed. *Superior Court of Pennsylvania Annual Report* (1988) and (1989).

al of appellate counsel, Gaerttner informed this court that he wished to proceed *pro se*. After filing his *pro se* brief and the Commonwealth filing a responsive brief, Gaerttner requested the appointment of counsel. Upon remand, the trial court appointed appellate counsel and a supplemental appellant's brief was filed. This court reviewed the counseled brief on appeal and did not review appellant's *pro se* issues. In a *per curiam* order, the Pennsylvania Supreme Court remanded the case to our court for a review of the *pro se* issues. *Commonwealth v. Gaerttner, supra.* A fair interpretation of this order reflects that the supreme court recognized that the *pro se* had expressed a clear intention for self-representation at various stages of his case.

Although we are aware of *Commonwealth v. Gretz*, 520 Pa. 324, 554 A.2d 19 (1989), a brief *per curiam* order stating that such orders constitute precedent, we recognize the problems that are apparent from such a holding. Essentially, an unexplained *per curiam* affirmance or reversal fails to inform the bench and the bar of the precise questions adjudicated, and the actual precedent established. For example, the Supreme Court in *Gaerttner* did not state that its mandate in that case was based upon a specific rule of law, nor did it authorize "hybrid" representation on appeal. It did not overrule a long line of cases from this court which hold that a *pro se* brief and a counseled brief will not be reviewed together on appeal. *Commonwealth v. Kibler, supra; Commonwealth v. Knapp, supra.* In *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989), a supreme court case filed after *Gaerttner*, the court considered a *pro se* supplemental brief filed in compliance with Pa.R.A.P. 2501(a), Post–Submission Communications, but did not cite *Gaerttner* as support for considering the *pro se* issue, nor did it announce a rule recognizing the right in every appellate case to hybrid representation. The court simply acted in the interests of justice given the exceptional circumstances, without establishing a broad procedural rule.

This is the context within which we as an intermediate appellate court must read *Gaerttner.*

Based on the foregoing, and our desire to balance a *pro se*'s constitutional rights and the apparent administrative burdens in an hybrid appeal, our revisit to the *pro se* policy of this court leads us to hold as follows. We will accept for filing *pro se* appellate briefs, but we will not review a *pro se* brief if a counseled brief has been filed, either before, simultaneously with, or after the *pro se,* due to the judicial confusion and delay that ensues. Because we refuse to play a timing game or that of a mind reader, trying to determine what the *pro se really* wants, we see no difference as to when the *pro se* brief is filed in relation to the counseled brief. If a *pro se* brief is filed in a counseled appeal, we direct the prothonotary to send the *pro se* brief on to counsel who is best able to determine in her professional judgment which of the *pro se*'s issues should be presented for our review. Counsel may argue such pertinent issues in her brief to the court, or if the appellate brief has been filed, she may file a supplemental brief addressing those same issues. If the *pro se* brief alleges ineffectiveness of appellate counsel or an affirmative desire to be heard *pro se,* we direct counsel to petition this court to remand the case to the trial court so that it may conduct a full hearing in order to determine appellant's knowing and intelligent waiver of his right to appellate counsel, and of his desire to proceed *pro se,* or in the case of ineffectiveness, an appointment of new appellate counsel.

Instantly, appellant filed a *pro se* notice of appeal, an application for leave to file and proceed in forma pauperis, and for appointment of counsel on December 14, 1987. On May 26, 1988, appellant filed another *pro se* motion for the appointment of new counsel. On June 10, 1988, we entered a *per curiam* order remanding this appeal to the trial court for the appointment of new counsel. Present counsel was appointed on June 22, 1988, to represent appellant on appeal. Appellant's counsel filed a brief on October 17, 1988, but a stipulation in the record reveals that the Common-

wealth and appellant's counsel received a copy of the *pro se*'s brief on or about September 30, 1988. Our prothonotary has docketed appellant's *pro se* brief as being filed October 17, 1988, the same day as counsel. This appeal was argued before a panel of this court on January 26, 1989. However, prior to a decision from the panel, this case was certified to the full court for a decision on the *pro se* matter.

In keeping with our *pro se* policy, as appellant is represented by counsel on appeal, and counsel has been provided a copy of appellant's *pro se* brief, and has not filed a supplemental brief, we will review counsel's brief on appeal. Accordingly, appellant raises the following arguments for our review.

I. Whether the trial court erred in denying trial counsel's request for continuance, thereby preventing the appellant from obtaining a copy of the suppression transcript for use in impeaching the sole eyewitness, who had made material inconsistent statements, and alternatively, whether trial counsel was ineffective in failing to obtain said transcript in a timely manner.

II. Whether the trial court erred in ignoring and failing to honor a prior order of the suppression court which had reduced the grade of robbery charged from felony one to felony three, and, alternatively, whether prior counsel, were ineffective for failing to pursue this issue.

III. Whether the appellant's trial counsel was ineffective in failing to investigate and pursue at trial a defense of mental infirmity due to intoxication, given the obvious state of his intoxication at the time of his arrest.

IV. Whether the trial court erred in admitting into evidence a bumper jack found in appellant's car at the time of his arrest, where there was absolutely no evidence that a bumper jack had been seen or used in the crime charged.

V. Whether the appellant was denied the effective assistance of trial counsel by virtue of said counsel's failure to object to a knowingly false and misleading statement made by the prosecutor in her closing argument, which had the clear effect of suggesting prior criminal activity, was untrue, and unfairly disparaged appellant's character.

VI. Whether the trial court erred in failing to strike testimony of a police officer as to his belief in the appellant's guilt.

VII. Whether trial counsel was ineffective in failing to present a meaningful and advocate-like closing argument, where said argument was merely perfunctory and neutral, and whether post-trial counsel was ineffective for not preserving this issue.

Initially, appellant asserts that the trial court erred in denying his motion for a continuance thereby precluding him from effectively impeaching the only eyewitness in the case. Further, appellant avers that trial counsel was ineffective for failing to secure a suppression hearing transcript in a timely fashion. It is well-settled that "the refusal to grant a continuance to enable defense counsel to obtain a transcript of the suppression hearing for use in cross-examination at trial is grounds for reversal only when a defendant can show that he was actually prejudiced by that refusal." *Commonwealth v. Johnson*, 291 Pa.Super. 566, 577, 436 A.2d 645, 651 (1981), citing *Commonwealth v. McKelvie*, 471 Pa. 541, 370 A.2d 1155 (1977). At the time of appellant's trial on January 7, 1987, the September 4, 1986 suppression hearing transcript was not available for use as an impeachment tool. Due to this, the defense requested a continuance in order to obtain a transcript. The trial court denied the request because the Commonwealth stipulated to the fact that the victim's testimony at the suppression hearing concerning which side of her car the assailant approached first was inconsistent. Presently, appellant argues that not only was this stipulation insufficient, but there were other inconsistent statements as well.

In addition to the stipulated inconsistency, appellant asserts four other inconsistencies between the victim's suppression hearing testimony and her eventual trial testimony. They are: (1) whether the victim gave a description of the assailant's clothing to the police; (2) whether or not the object the assailant leveled at the victim outside the car was a shotgun; (3) where the victim's car was located during the episode, and (4) whether appellant was seated in the back seat of the police car when the victim identified him. Appellant avers that these material inconsistencies in the victim's testimony, coupled with his inability to impeach her, prejudiced him.

■ Instantly, appellant was scheduled for trial before the Honorable James F. Clarke on May 14, 1986, but Judge Clarke recused himself on August 8, 1986. As the case was transferred to the Honorable Walter A. Little, trial was scheduled for September 4, 1986. A suppression hearing was commenced that day, but ended when appellant expressed his desire to plea. However, appellant decided not to plea and the case was transferred to the Honorable Raymond A. Novak. Appellant appeared before the court on September 8, 1986, a defense continuance was requested and granted due to counsel's inability to proceed. Appellant's case was rescheduled for trial on January 6, 1987. During a pre-trial motion that day, the defense requested a continuance, but was denied relief. Following this denial, the trial court conducted a *new* suppression hearing. Appellant asserts that the denial of his request deprived him of the opportunity to impeach fully the victim's testimony.

First, appellant avers that the victim's testimony concerning which side of her car appellant approached her was not adequately covered in the stipulation. We disagree. Our review of the record reveals that the victim's inconsistent testimony concerning appellant's approach of her car was presented clearly to the jury. In fact, on cross-examination, the victim conceded that there was a conflict in her testimony. Later she explained that this was due to her confusion and inexperience as a witness. However, she did not deny

having stated the conflicting testimony and the jury was well aware of the circumstances surrounding this testimony. Consequently, we cannot understand how appellant was prejudiced thereby.

Similarly at trial, the victim testified that appellant put what she thought was a shotgun to her car window. However, during the initial suppression hearing, the victim was inconclusive as to what appellant was holding. During the trial, Judge Novak read into the record a combined summarization of the victim's testimony as given by Judge Little and the prosecutor in order to facilitate the defense in cross-examining the victim as to inconsistencies in her testimony. Once again all testimony was presented to the jury during trial in order to help them determine the credibility of all the witnesses. Clearly, appellant was not prejudiced by not having the suppression hearing transcript.

Appellant's argument concerning the victim's inconsistency as to the location of her car is also devoid of merit. During the trial, the jury heard testimony concerning the victim's account of the robbery from the initial suppression hearing as well as on direct and cross-examination at trial. The testimony revealed that while the victim was driving home she was followed into her driveway by another car. After running from her assailant and seeking assistance, the victim returned to her car to find that it had been moved from the previous location. Upon our review of the record, we do not find that the trial court's refusal to grant the continuance prejudiced appellant in this regard.

Appellant questions the victim's suppression testimony of whether he was seated in the backseat of the police vehicle when she identified him as her assailant, because a police officer testified that appellant was outside the police car when he was identified by the victim. This contradiction of accounts concerning appellant's location either in or outside the police car occurred again during the *new* suppression hearing prior to trial. Consequently, defense counsel's lack of the initial suppression transcript was no impediment to

cross-examination on this subject at trial. Accordingly, appellant was not prejudiced.

■ Finally, appellant asserts that the victim testified at the initial suppression hearing that she did not describe her assailant's clothing. At trial the victim testified that she told the police that he wore blue jeans. The police officer who arrived minutes after the robbery testified, at the new suppression hearing and at trial, that when he interviewed the victim she described her assailant as wearing blue jeans. Assuming that this lone and popular article of clothing constitutes a description of appellant's clothing, then a contradiction exists. However, given the fact that the police officer who initially interviewed the victim following the robbery testified that the victim described her assailant as wearing blue jeans, and the description of the clothing was not so distinctive so as to stand out from other clothing styles, we cannot hold that appellant was prejudiced in this regard. As we have found each of appellant's claims devoid of merit, we cannot hold trial counsel ineffective for failing to pursue a baseless claim. *Commonwealth v. Tavares*, 382 Pa.Super. 317, 555 A.2d 199 (1989).

■ Secondly, appellant contends the trial court erred in ignoring the prior order of the suppression court which reduced the robbery charge to a felony of the third degree. Also, appellant alleges trial and post-trial counsel's ineffectiveness for failing to pursue this claim. The Commonwealth argues that the initial suppression court never made a dispositive order effectively quashing the criminal information insofar as it charged robbery as a felony of the first degree and reducing the charge to robbery as a felony of the third degree. Accordingly, the Commonwealth asserts the trial court was not obliged to adhere to such a ruling.

The applicable statute, 18 Pa.C.S. § 3701, reads:

### § 3701. Robbery

**(a) Offense defined.—**

 (1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

**(b) Grading.**—Robbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise it is a felony of the first degree.

Following the Commonwealth's summary of the evidence at the plea proceeding, the Honorable Walter R. Little stated:

The crime does not arise to the rating which is listed in the information by the Commonwealth, the District Attorney's office. It only arises, in the Court's opinion to a felony three in Section 3701 a, Subsection 5, which indicates robbery or the taking or removing by force, however slight, which is classified as a felony three. And so that is the rating that I will accept on the nolo contendere plea.

Notes of Testimony, N.T., 9/4/86 at 17–18. Although the Commonwealth objected to the trial court's classification of the robbery as a felony of the third degree, Judge Little remained firm concerning the classification of the offense for an acceptance of appellant's plea of nolo contendere. However, following a colloquy with appellant concerning his plea, the trial court refused to accept appellant's plea due to his inability to assure the court of his actual willingness to enter the plea. Consequently, the trial court ended the proceedings and ordered appellant to be returned to jail.

When appellant appeared before the Honorable Raymond A. Novak with his pre-trial motion to enforce Judge Little's ruling, the trial court stated:

We find that the proceeding before Judge Little on September 4, 1986, was incomplete both as to the Defendant's pretrial motion to suppress as well as the proper plea. There was no order suppressing evidence, and that there was no plea. We, therefore, find that any findings of Judge Little during the course of those proceedings were tentative and not final orders of the Court.

N.T., 1/6/87 at 12. In essence, the trial court accepted the Commonwealth's characterization of the matter as not a final ruling but a statement as to what Judge Little would accept in terms of a plea in this case. Moreover, both parties agreed that Judge Little did not enter an order in regard to this matter. We agree with the Commonwealth's approach that this issue is best considered from the general principle of law that the withdrawal of a guilty plea returns a criminal defendant to the status quo. For example, in *Commonwealth v. Potosnak*, 289 Pa.Super. 115, 432 A.2d 1078 (1981), we stated that all charges either dismissed or *nolle prossed* pursuant to a plea agreement are revived upon withdrawal of the plea. Also, jeopardy attaches upon the trial court's acceptance of the plea. Finally, the withdrawal of a guilty plea is not a bar to reprosecution unless the defendant's motion was caused by prosecutorial overreaching such that the prosecutor's *intent* was to subvert the protections afforded by the Double Jeopardy Clause. *Commonwealth v. Arelt*, 308 Pa.Super. 236, 454 A.2d 108 (1982).

Initially, the trial court never accepted appellant's plea of *nolo contendre;* therefore, jeopardy never attached. Moreover, the trial court never entered an order concerning the grading of appellant's offense. As the plea proceeding began to break down, and appellant began to argue contingent matters before the court, the trial court's non-acceptance of appellant's plea returned appellant to status quo thereby re-exposing appellant to all previous charges. Ac-

cordingly, the trial court did not err in this regard, and prior counsel cannot be deemed ineffective for failing to pursue this claim. *See Commonwealth v. Tavares, supra.*

Thirdly, appellant argues that trial counsel and post-trial counsel failed to pursue a defense of involuntary intoxication and/or mental infirmity where the issue of appellant's intoxication was crucial to the defense. It is well-settled that:

Neither voluntary intoxication nor voluntary drugged condition is a defense in a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent to the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa.C.S. § 308. Clearly, voluntary intoxication is statutorily precluded as a defense to robbery. Moreover, our supreme court has ruled "it is obvious that an actor should not be insulated from criminal liability for acts which result from a mental state that is voluntarily self-induced." *Commonwealth v. Hicks,* 483 Pa. 305, 311, 396 A.2d 1183, 1186 (1979). As appellant has offered nothing to support his claim that prior counsel could have pursued an involuntary intoxication defense, we are not prepared to premise a defense on chronic alcoholism. *See Commonwealth v. Brode,* 523 Pa. 20, 564 A.2d 1254 (1989) (expert evidence properly excluded as a defense where defendant's intoxication on morning of shooting was a necessary factor in defendant's mental condition at time of shooting); *Commonwealth v. Kuhn,* 327 Pa.Super. 72, 475 A.2d 103 (1984) (plurality opinion) (involuntary intoxication cannot as a matter of law be established through evidence showing that criminal defendant was a chronic alcoholic incapable of voluntarily refraining from ingestion of alcohol). Accordingly, appellant's claim is devoid of merit.

Appellant claims that the trial court erred when it permitted the bumper jack, found in the back seat of

appellant's car, to be admitted into evidence even though the sole prosecution eyewitness was unable to identify it other than to state that she saw something "wrapped up." A review of the record reveals that the victim testified that she believed appellant held a shotgun up to her car window, but she did not know for sure because the object was wrapped in a black coat. It is well-settled that:

A weapon shown to have been in a defendant's possession may be properly admitted evidence even though it cannot be identified positively as the weapon used in committing a crime; it may tend to prove that the defendant had a weapon similar to the one used. Any uncertainty that the weapon is not the actual weapon used in the crime, goes to the weight of such evidence. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981); *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974).

*Commonwealth v. Lark*, 316 Pa.Super. 240, 254, 462 A.2d 1329, 1336 (1983), affirmed on other grounds, 505 Pa. 126, 477 A.2d 857 (1984). The trial court found that:

[A]lthough the bumper jack was not positively identified as the robbery weapon, it could, at a quick glance under stressful circumstances, very easily have been mistaken for a shotgun. Additionally, the fact that the jack was found in the back seat as opposed to the trunk was circumstantial evidence which the jury was free to weigh in its deliberations.

Trial court opinion, 4/14/88 at 8. As we agree with the trial court, we hold that the bumper jack was admitted properly into evidence.

██ Appellant alleges that the trial court erred in denying his post-trial motion which claimed that the prosecutor made a knowingly false and misleading statement during her closing argument. Also, appellant alleges that trial counsel was ineffective for failing to object to the prosecutor's statement. During the prosecutor's closing to the jury, she stated:

The defendant says he was in the service. He was born in October of 1926. In July of—he says of either '43 or '44 he was discharged. He would have been 18 or 17 when he was discharged. How could this be an honorable discharge at 17?

N.T., 1/8/87 at 291. Appellant alleges that this commentary cast aspersions upon his credibility, and inferred to the jury that he had been dismissed from the service for a bad ˇct or a criminal offense. It is well established that not every intemperate or uncalled for remark made by the prosecutor requires a new trial. Our supreme court has held:

[C]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. D'Amato*, 514 Pa. 471, 490, 526 A.2d 300, 309 (1987) (citations omitted) quoting *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986). Moreover, "the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred." *Id.* Finally, the supreme court has set forth the appellate courts' scope of review in regard to these matters:

Whether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion.

*Commonwealth v. D'Amato, supra,* 514 Pa. at 491, 526 A.2d at 310 quoting *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). The trial court in this instance found that: "the remark was merely a brief comment about the defendant's credibility during the prosecutor's rather lengthy closing argument. It was not made in an effort to prejudice the defendant; rather, it was made

merely for purposes of questioning the defendant's credibility as a witness." Trial court opinion, 4/14/88 at 15–16. Upon our careful review of the record, we agree. Accordingly, trial counsel cannot be deemed ineffective for failing to pursue a baseless claim.

 Next, appellant asserts that the trial court erred in denying trial counsel's motion to strike improper testimony of a police officer and that trial counsel was ineffective for failing to seek a mistrial. Upon the prosecutor's cross-examination of Officer Howard McQuillan, a certified Intoxilyzer operator, McQuillan, stated that in his opinion, appellant was capable of driving but not safely. Then the following exchange occurred:

Q. Do you believe that he [the defendant] had motor coordination and sense enough to rob someone?

A. I believe so. Yes, he could.

Q. He could have robbed this woman?

A. I believe so, yes.

N.T., 1/8/87 at 240. In order to clarify the officer's response, the trial court proffered:

Q. Officer, when you ... answered the District Attorney's question as to whether this man was capable of committing a robbery, you have no knowledge of the facts of this case, do you?

A. I—I know—you know, my subpoena says a robbery and the other one.

Q. So you are not saying that you have an opinion as to whether the defendant committed the crime?

A. I don't believe that was the question.

Q. It wasn't the question, but I am just making it clear. I don't want the jury to be under the impression that you have an opinion as to whether he committed the crime.

A. No I have no opinion as to—no—whether he committed or he didn't commit the crime.

Q. In fact, you have no factual basis for opining one way or the other?

A. That's correct.

Q. What you meant to say was that, in your opinion, he was physically capable of wielding a weapon, or taking a purse, or actions of that kind when considered in the abstract?

A. That's correct.

N.T., 1/8/87 at 241–42. Following the court's questioning, a sidebar conference was held during which defense counsel requested that the prosecutor's question and the officer's response be stricken. The trial court denied defense counsel's request. Upon our review of the record, we agree with the trial court that:

> it was obvious to the jury that Officer McQuillan would have no independent knowledge of the crime nor would he have any basis for an opinion as to the defendant's guilt or innocence. As our questions quite clearly obviated any prejudice to the defendant, we find that it was unnecessary to either strike this testimony or declare a mistrial.

Trial court opinion, 4/14/88 at 14. Accordingly, appellant's claim of error is meritless.

 Finally, appellant asserts that trial counsel's closing argument to the jury was meaningless and nonadversarial. Also, appellant contends that post-trial counsel was ineffective for failing to pursue this matter. "The constitutional right to representation by counsel in a criminal proceeding includes the right to make a closing argument." *Commonwealth v. Sparks*, 372 Pa.Super. 463, 467, 539 A.2d 887, 889 (1988). Our review of defense counsel's closing argument reveals that, although it was briefer than the Commonwealth's, it informed the jury that their fundamental role was to determine if there were conflicts in the witnesses' testimony, especially the victim's, and if such conflicts undermined the witnesses' credibility. As this case involved a determination of which witness was more credible, particularly the victim or appellant, and there was no complex scientific evidence for the jury to ponder, we believe that defense counsel's closing argument was quite appropriate. Accordingly, appellant has not supported his

ineffectiveness claim as it relates to trial and post-trial counsel. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Tavares, supra.*

Judgment of Sentence affirmed.

WIEAND, J. files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting.

After reviewing the briefs filed pro se by appellant and by his counsel, I concur in the decision of the majority to affirm the judgment of sentence. However, I respectfully dissent from the majority's formulation of a policy which precludes consideration by the Superior Court of pro se briefs where separate briefs have been filed by counsel. It is not that I disagree necessarily with the substance of such a policy as much as I disagree with this Court's right to determine the same. My review of the Supreme Court's per curiam order in *Commonwealth v. Gaerttner*, 518 Pa. 452, 543 A.2d 1091 (1988), which remanded the case to the Superior Court with directions to consider the defendant's pro se brief, suggests that the Supreme Court has already adopted a policy which is contrary to the policy which this Court attempts to set in the instant case. See also: *Commonwealth v. Shaw*, 379 Pa.Super. 491, 495 n. 2, 550 A.2d 555, 557 n. 2 (1988). Although it is correct that the Supreme Court in *Gaerttner* acted merely by per curiam order and did not provide us with the reasons for its decision, I can only assume that it acted in the interest of achieving full and complete appellate review as speedily as possible and with a minimum waste of judicial resources, both in the trial and appellate courts. Whatever the Supreme Court's reasons, however, its per curiam order in *Gaerttner*, in my judgment, has precedentially established a *procedural* policy which the Superior Court is required to follow.