J-S09002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.R.S., A MINOR, <br><br> Appellee <br><br><br> APPEAL OF: L.M., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br> No. 994 EDA 2016 |

Appeal from the Decree Entered February 25, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000106-2016

| | |
|---|---|
| IN THE INTEREST OF: M.J.S., A MINOR, <br><br> Appellee <br><br><br> APPEAL OF: L.M., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br> No. 995 EDA 2016 |

Appeal from the Decree Entered February 25, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000107-2016

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 29, 2017**

L.M. ("Mother") appeals from the decrees entered on February 25,

2016, granting the petitions filed by the Philadelphia Department of Human

---

[*] Retired Senior Judge assigned to the Superior Court.

Services ("DHS") to involuntarily terminate her parental rights to J.R.S., born in May of 2004, and M.J.S.,[1] born in July of 2006 (collectively, "the Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).[2] We are constrained to vacate and remand.

The trial court set forth the factual background and procedural history as follows:

> The family in this case became known to DHS on June 24, 2014, when DHS received a General Protective Services ("GPS") report that Mother left the Children alone for long periods of time, that the Children had been locked out of their house when they returned from school and that Mother did not maintain adequate food in the house. DHS inspected the home and found it clean and safe, but Mother accepted Rapid Service Response Initiative ("RSRI") services. The case was transferred from DHS to a Community Umbrella Agency ("CUA"). A CUA worker visited the home to deliver food on July 21, 2014. Mother informed the CUA worker that she would be evicted from the home within sixty days and did not have a job. DHS filed a dependent petition for the Children on July 29, 2014. The Children were adjudicated dependent on August 14, 2014, fully committed to DHS custody and placed with their maternal uncle. On September 3, 2014, the uncle became unable to care for the Children, and they were placed in a foster home with D.R. ("Foster Mother"). Mother was present at a September 15, [2014], Single Case Plan ("SCP") meeting. Mother's objectives under the SCP were to attend the Clinical Evaluation Unit

---

[1]  While the trial court opinion and the briefs label M.J.S. as M.L.S., our review of the common pleas court's record reveals that M.J.S. is the correct abbreviation of the child's name. **See** Petition for Involuntary Termination of Parental Rights, Exhibit B, Certification of Birth.

[2]  On that same date, the trial court entered a decree terminating the parental rights of L.S., the Children's biological father. L.S. is not a party to this appeal, nor has he filed an appeal from the termination of his parental rights.

("CEU") for random drug screens and treatment, attend family therapy and sign appropriate releases. Mother tested positive for cocaine, marijuana and opiates on August 14, [2014]. Over the next sixteen months, Mother attended only one out of six permanency review hearings. On February 6, 2016, DHS filed petitions to terminate Mother's parental rights to the Children and change the Children's permanency goal to adoption.

The termination and goal change trial was held on February 25, 2016.[3] At the trial, the CUA social worker testified that the Children were removed from Mother's care because of Mother's drug and alcohol issues and inappropriate housing. They have been in Foster Mother's care for seventeen months. (N.T. 2/25/16, pgs. 7-8). Mother's objectives under the SCP were to complete drug and alcohol treatment, take random drug screens, attend family therapy, obtain employment and appropriate housing and attend scheduled visits with the Children. Mother was present for the SCP meeting where these objectives were established. (N.T. 2/25/16, pgs. 9-10). Mother had no employment and had not completed drug and alcohol treatment or mental health treatment. (N.T. 2/25/16, pg. 10). Mother had given CUA the address of an abandoned building as her residence. DHS performed a Parent Locator Service ("PLS") and left contact information for Mother at her last known address. (N.T. 2/25/16, pgs. 10-11). Mother has weekly supervised visitation, but had last attended a visit on October 13, 2015. Mother's visitation had always been sporadic. (N.T. 2/25/16, pg. 12). Mother was often dirty at visits, and had a purse full of cracked mirrors. Mother's emotions were erratic. (N.T. 2/25/16, pg. 14). Mother had been referred to the Achieving Reunification Center ("ARC") for housing and drug and alcohol treatment, but had relapsed and left in August 2015, because she did not like the restrictions the program put on her. (N.T. 2/25/16, pg. 13). Mother was ordered by the court to take random drug screens, but had not taken any in six months. (N.T. 2/25/16, pg. 25). Mother had been ordered by the court to attend the CEU for dual diagnosis assessment, but never went. (N.T. 2/25/16, pgs. 43-45). Mother never began court ordered mental health treatment. (N.T. 2/25/16, pgs. 23-24).

---

[3] Mother was not present at the termination-of-parental-rights hearing, but her counsel appeared.

Mother never successfully completed any of her SCP objectives. The CUA social worker testified that she did not believe Mother could complete her objectives. (N.T. 2/25/16, pgs. 17-19, 21). The Children cry when Mother does not visit. The Children and Mother have a deep but not positive relationship. The Children know and love Mother, but would not suffer irreparable harm if her parental rights were terminated. (N.T. 2/25/16, pgs. 17-19, 21). Foster Mother provides for the Children's needs and takes good care of them. (N.T. 2/25/16, pgs. 17-19). It would be in the best interest of the Children to remain with Foster Mother and be adopted by her. (N.T. 2/25/16, pg. 22). The court found that DHS had made reasonable efforts to reunify the Children with their parents. The court found clear and convincing evidence to terminate Mother's parental rights to the Children, and that there was no healthy maternal bond with the Children.

Trial Court Opinion, 5/18/16, at 1–3 (footnote omitted).

On March 28, 2016,[4] Mother, filed *pro se* notices of appeal along with concise statements of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b),[5] and the trial court complied with Pa.R.A.P. 1925(a). On April 25, 2016, this Court, *sua sponte*, consolidated the appeals.

---

[4] March 26, 2016, the thirtieth day of the appeal period, fell on a Saturday. Thus, Mother's notices of appeal filed on Monday, March 28, 2016, were timely. 1 Pa.C.S. § 1908 (when thirtieth day of appeal period falls on a Saturday or Sunday, those days are excluded from computation).

[5] Based upon Mother's allegations in her Rule 1925 statement, trial counsel asserted a breakdown in the attorney-client relationship and sought to withdraw in this Court on May 25, 2016. We granted the motion to withdraw on June 24, 2016, and retaining jurisdiction, we remanded to the trial court for a determination of whether Mother was entitled to court-appointed counsel. The trial court appointed new counsel to represent Mother on appeal on July 7, 2016, and newly appointed counsel entered his appearance in this Court on July 28, 2016. New counsel never sought permission to file an amended concise statement of errors. Thus, Mother's notices of appeal
*(Footnote Continued Next Page)*

Mother raises the following issues on appeal:

1. Did the court below err in ruling that Appellant/Mother, L.M., had been properly served, as required by statutes and court rules, and in denying Due Process to Appellant L.M., Mother, as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

2. Did the court below err in finding that the Department of Human Services (hereinafter, "DHS"), had met its burden in proving grounds under 23 Pa.C.S.A. §§2511(a)(1), (2), (5) and (8), by "clear and convincing evidence"?

4. Did the court below err in finding that DHS had met its burden to prove that termination would be in the child's best interests, under §2511(b)?

Mother's Brief at 4.[6]

We are persuaded that Mother's first issue has merit, and we disagree with DHS that the issue is waived. DHS argues that Mother's notice and due process issue is waived by her failure to include the claim in her *pro se* Rule 1925(b) statement.[7] DHS's Brief at 29. The failure to include an issue in a Pa.R.A.P. 1925(b) statement generally results in waiver of the claim.

*(Footnote Continued)* ————————

and Rule 1925 statements were filed *pro se*, and the appellate brief was filed by new appellate counsel.

[6] Whether the result of clerical or substantive error, Mother failed to present an issue 3 in her brief. Mother's Brief at 4. ***See Krebs v. United Refining Co. of PA***, 893 A.2d 776 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in a brief on appeal).

[7] Because the notice issue was not included in the *pro se* concise statement, the trial court never addressed the issue.

Pa.R.A.P. 1925(b)(4)(vii); **M.G. v. L.D.**, ___ A.3d ___, 2017 PA Super 29 (Pa. Super. Feb. 8, 2017). This case, however, is an anomaly. Appellant herein was represented by counsel when she filed her *pro se* notice of appeal and Pa.R.A.P. 1925 statement of errors.[8] Hybrid representation is not permitted. **Commonwealth v. Jette**, 23 A.3d 1032, 1040 (Pa. 2011) ("Our examination of this Court's jurisprudence reveals the consistent expression precluding hybrid representation for all of the reasons initially expressed by the Superior Court in its *en banc* decision in **Ellis I** [581 A.2d 595 (Pa. Super. 1990)]." In **Commonwealth v. Williams**, 151 A.3d 621 (Pa. Super. 2016), we distinguished *pro se* notices of appeal from other filings that require counsel to provide legal knowledge and strategy where the defendant is represented by counsel. A concise statement of errors complained of on appeal, unlike a notice of appeal, is a filing requiring counsel's legal knowledge and strategy. Therefore, because 1) Mother was represented by counsel when she filed her *pro se* notice of appeal, 2) our appellate rules required the filing of a concise statement of errors with the notice of appeal in this Children's Fast Track appeal, 3) Mother asserted in her concise statement that she "made repeated attempts to get in contact

_____

[8] In a Children's Fast Track appeal, such as the case *sub judice*, Pa.R.A.P. 905(2) provides that "the concise statement of errors complained of on appeal as described in [Pa.R.A.P.] 1925(a)(2) shall be filed with the notice of appeal. . . ." **See** Pa.R.A.P. 1925(a)(2)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal required by [Pa.R.A.P.] 905.").

with [my court-appointed attorney] for help with no response," and 4) when new counsel was appointed to represent Mother on appeal he failed to request permission to file an amended concise statement of errors, we will not find waiver.

Thus, we consider Mother's claim. Mother argues that she was denied her constitutional guarantee to due process of law, as set forth in the United States and Pennsylvania Constitutions, because DHS failed to properly serve her with notice of the termination petitions.

This Court recently examined the constitutional due-process guarantee, which is included in the statutory scheme of the Adoption Act, in **In the Interest of A.N.P.**, ___ A.3d ___, 2017 PA Super 21 (Pa. Super. filed January 30, 2017), as follows:

> It is well settled that termination of parental rights implicates a parent's Fourteenth Amendment right to due process. **See In the Interest of A.P.**, 692 A.2d 240, 242 (Pa. Super. 1997) (stating that parents have a "fundamental liberty interest ... in the care, custody, and management of their children") (citing **Santosky v. Kramer**, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action. **See In re Interest of K.B.**, 763 A.2d 436, 439 (Pa. Super. 2000) (citing **Santosky**, **supra**). **DHS bears the burden to prove proper service by its affirmative act**. **In re Interest of K.B.**, 763 A.2d at 439 (citing **Leight v. Lefkowitz**, 419 Pa. Super. 502, 615 A.2d 751, 753 (1992)).
>
> **Section 2513(b) of the Adoption Act provides that at least ten days' notice shall be given to the parents, by personal service or registered mail, to their last known address**, or by such other means as the court may require. Further, the section provides that the notice shall state certain

- 7 -

language, including the right to representation and how to obtain counsel if the parents cannot afford counsel. Additionally, the statutory language requires a warning that, upon failure to appear, the hearing will go on without the parent, and the parent's rights to the child in question may be terminated by the court without the parent's presence at the hearing. 23 Pa.C.S. § 2513(b).

Rule 5.3 of the Pennsylvania Orphans' Court Rules provides:

> Whenever notice of the intention to do any act is required, such notice shall be given at least ten days prior to the doing of the act, unless a different period is specified by a rule adopted by the Supreme Court or by an Act of Assembly.

Pa.O.C.R. 5.3.[9]

In addition, Rule 15.4(d) of the Pennsylvania Orphans' Court Rules, governing involuntary termination of parental rights, provides that notice of the involuntary termination petition must be given to each parent. Furthermore, Rule 15.6 sets forth the manner of service, as follows:

> (a) **Notice to every person to be notified shall be by personal service, service at his or her residence on an adult or member of the household, or by registered or certified mail to his or her last known address.** If such service is unobtainable and the registered mail is returned undelivered, then:
>
> > (1) no further notice shall be required in proceedings under Rules 15.2 or 15.3, and

_____

[9] We note that Rule 5.3 was replaced effective September 1, 2016. The order appealed herein was filed February 25, 2016, prior to the rule replacement; thus, the above version of Rule 5.3 was in effect at the time of the instant case.

> (2) in proceedings under Rules 15.4 and 15.5, further notice by publication or otherwise shall be given if required by general rule or special order of the local Orphans' Court. If, after reasonable investigation, the identity of a person to be notified is unknown, notice to him or her shall not be required.

Pa.O.C.R. 15.6(a).

***Interest of A.N.P.***, ___ A.3d at ___, 2017 PA Super 21 at *10–11 (emphases added).

This Court has required a good faith effort to provide notice to a parent, at her correct address, of a hearing that may result in the termination of the individual's parental rights. ***In re Adoption of K.G.M.***, 845 A.2d 861 (Pa. Super. 2004) (citing ***Adoption of Walker***, 360 A.2d 603, 607 (Pa. 1976); ***In re Maynard***, 473 A.2d 1084, 1086 (Pa. Super. 1984)).

In ***In the Interest of K.B.***, 763 A.2d 436 (Pa. Super. 2000), the issue before us was whether the parents had been properly served with notice of the hearing to terminate their parental rights. This Court held that the personal service by the process-servers, as evidenced by their affidavits, complied with the requirements of the Adoption Act and the Pennsylvania Rules of Civil Procedure by affording the parents eighteen days notice of the hearing on the termination petition. ***Id***. at 440.

At the termination hearing in the present case, Courtney Norella, the assistant city solicitor, stated that DHS served the petition on Mother by leaving it at the front door of a home that a Parent Locator Service ("PLS")

search showed to be Mother's last known address. N.T., 2/25/16, at 4. Mother's trial counsel immediately objected to the lack of service of the petition on Mother by personal service or by registered mail as required by 23 Pa.C.S. § 2513, at least ten days in advance, as follows:

> [Mother's trial counsel]: I object, your Honor, based on the notice provision in the Adoption Act, title 23 section 2513, at least 10 days notice should be given to the parents by personal service or by registered mail to their last known address, and I don't think leaving it at the front door constitutes personal service. We don't even know if it was received. Someone has to either sign for it, or receive it. It doesn't necessarily have to be the individual who you're trying to serve but somebody in their residence has to receive it. So, we don't know what was actually done, under the Adoption Act. I don't think that constitutes notice or service.
>
> They could have sent it certified mail that's also another, by registered mail with a green card, and they didn't do that, your Honor, so I don't think service was effectuated on . . . my client.

N.T., 2/25/16, at 4–5. The trial court responded, "I would agree with you there's no service but there's reasonable attempts," without any further inquiry or delineation of what **reasonable** attempts were made. *Id*. at 5. Having had no notice, Mother was not present at the termination hearing; indeed, she was not present at the prior December 17, 2015, or September, 2015 hearings. N.T., 2/25/16, at 6.

Ms. Norella testified that the last contact she had with Mother was on November 20, 2015, when she signed consents for the release of Children's medical records. N.T., 2/25/16, at 9. Ms. Norella also stated that Mother had been present at a single case plan on November 18, 2015, and she had

provided an address, stating that she was living with a friend, *id*. at 10–11, which was a different address from the PLS search, but it "appeared" to be abandoned. *Id*. at 4, 11. Ms. Norella stated that DHS "left a note" at the door. *Id*. at 11.

Service of notice of the termination hearing was improper in this case. As we stated in *In re X.J.*, 105 A.3d 1, 7 n.8 (Pa. Super. 2014): "The Adoption Act **mandates** that an individual whose parental rights may be terminated must be served with notice of an upcoming termination hearing. 23 Pa.C.S. § 2513(b). Where the parent in *X.J.* was served by first class mail, we admonished, "We remind the Agency and the orphans' court that the Orphans' Court Rules only allow service "by personal service, service at his or her residence on an adult or member of the household, or by registered or certified mail to his or her last known address." Pa.O.C.R. 15.6(a). *Id*. In that case, the hearing was continued multiple times because the agency failed to effectuate service as required.

Although judicial economy might dictate avoiding delay in a Children's Fast Track case, we are unwilling to overlook the lack of notice to Mother. Therefore, we believe the appropriate course of action is to remand this case for a new termination hearing. Accordingly, the February 25, 2016 decree is vacated and the case is remanded for further proceedings consistent with this Memorandum.

Decrees vacated. Case remanded. Jurisdiction relinquished.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017