475 A.2d 137

**COMMONWEALTH of Pennsylvania**

**v.**

**Raymond D. PAYNE, Appellant.**

Superior Court of Pennsylvania.

Argued April 26, 1983.

Filed April 19, 1984.

140

Elliot Jay Segel, Assistant Public Defender, Erie, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from January 5, 1982 Order of the Court of Common Pleas of Erie County denying appellant's, Raymond D. Payne's, Post-Conviction Hearing Act (PCHA) petition. 19 P.S. § 1180–1 *et seq.*, as amended; reenacted as 42 Pa.C.S.A. §§ 9541–9551. We affirm.

On April 11, 1977, appellant pleaded guilty to a general charge of murder regarding the strangulation death of a 16-year-old student of his in Erie, Pennsylvania. At the

guilty plea hearing, the court advised the appellant that he was being charged with the murder of "Debra Lynn Gama by means of ligature strangulation." Further, he was informed of his rights attendant to a trial by jury, except for the unanimity requirement of a guilty verdict. Also, the court defined the different classifications that make up the offense of murder in Pennsylvania's statutory scheme and the possible penalties that accompany their violation. Finally, the court posed the question to Mr. Payne, "... knowing all of this and having conferred with counsel over a period of six or seven months, is it your desire here this morning to enter a plea generally to the charge of murder?" To which Mr. Payne responded, "Yes, Sir." (N.T. 4/11/77 at 27)

Immediately after the rendition of the guilty plea colloquy and the court's acceptance of appellant's plea, a degree-of-guilt hearing was commenced with the testimony of a Pennsylvania State Trooper assigned to investigate the case. However, when the presiding judge heard a factual accounting from this witness, as to the manner in which the body was found (wire located around the neck, ankles and wrists of the victim as she floated in the Cussewago Creek, Crawford County),[1] he discontinued the proceedings and directed that they begin anew before a three-judge panel because, "based upon these matters[,] ... the crime charged m[ight] rise to murder in the first degree." *Id.* at 39.

Following the continuation of the degree-of-guilt hearing before the en banc court, the appellant was found guilty of first degree murder and, thereafter, was sentenced to a state institution "for the rest and remainder of [his] natural life." (N.T. 8/5/77 at 3) An appeal was perfected to the

---

**1.** A sample of the copper wire was taken to a spectrochemical laboratory in Pittsburgh and analyzed and determined to be automatic welding wire manufactured by the Linde Corporation in Ashtabula, Ohio. Thereafter, through police investigation, the wire was traced to Erie and eventually to the appellant.

Pennsylvania Supreme Court, which resulted in an affirmance of the judgment of sentence on the ground that the conviction was amply supported by the evidence. *Commonwealth v. Payne,* 483 Pa. 256, 396 A.2d 630 (1979). No other issue, aside from the sufficiency of the evidence, was raised. Also, it is to be noted that throughout the adjudicatory process appellant was represented by private counsel (Leonard G. Ambrose, III and Jess S. Jiuliante, Jr.).

On October 7, 1980, the appellant filed a *pro se* PCHA petition alleging that he was denied the effective assistance of counsel, which had a direct impact on the invalidity of his plea. In particular, he alleged that the plea was deficient in that he was not informed that "a jury ... would have to return a unanimous verdict" and "[a]t no point in the ... colloquy [was] a factual basis established prior to the acceptance of that plea." (Appellant's PCHA petition at 3) In addition, the appellant complained that his attorneys "never explored an intoxication defense or requested psychological testing for an intoxication defense." *Ibid.*

In that portion of the petition requesting a statement as to why the issues raised should not be considered finally litigated or waived, the appellant correctly noted that "[w]hen trial counsel is also the Direct Appeal Counsel, innefectiveness [sic] of counsel cannot be" waived. *Id.* at 5; *see Commonwealth v. Weathers El,* 485 Pa. 28, 400 A.2d 1295 (1979). Counsel from the public defender's office of Erie County was appointed to assist the appellant. Although there is a motion of record by said counsel requesting leave to amend the *pro se* PCHA petition of the accused, there is no record evidence that such occurred.

Nonetheless, following the Commonwealth's submission of a 10-page answer to the appellant's petition, the PCHA court ultimately, "after argument," denied the relief sought (e.g., release from custody, discharge or a new trial). This appeal followed.

The issues raised by the appellant below have been raised again on this appeal. However, after examining the record, we find it necessary to address only the allegation that prior counsel was ineffective for failing to challenge the guilty plea colloquy on the ground that the unanimity aspect of the jury's verdict was not explained to the accused.[2]

■ Before reaching the issue proffered, we wish to respond to the Commonwealth's argument that any and all claims presented by the appellant have been "waived." We disagree. Inasmuch as this is the first occasion that counsel other than counsel whose stewardship is questioned is representing the accused, the claims of ineffectiveness are preserved for review. *See Commonwealth v. Frankhouser*, 491 Pa. 171, 420 A.2d 396 (1980).

■ We also disagree with appellant's conclusion instantly that guilty plea counsel was ineffective for not challenging a plea that failed to inform appellant that any verdict which a jury might render would have to be unanimous. This belief is premised upon the enunciation in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), and endorsed by our Supreme Court in *Commonwealth v. Ward*, 483 Pa. 53, 394 A.2d 535 (1978), that certain information would have to be communicated to a defendant before his waiver of a jury trial would be labelled knowing and intelligent.

In reversing a conviction and ordering a new trial on the ground that the waiver of a jury trial was not knowing and intelligent, the *Williams* Court remarked:

Nowhere on the record is there any indication that [the defendant] knew the essential ingredients of a jury trial which are necessary to understand the significance of the

---

**2.** The other two grounds upon which the appellant assails his colloquy, cited *supra*, are refuted by the record. (*See* PCHA court Opinion at 3-4) Thus, we need not engage in a detailed discussion of their merits. Suffice it to say that the claims are unsubstantiated and, thus, do not entitle the accused to any type of relief.

right he was waiving. These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.... In view of the failure of the record to establish that appellant had sufficient knowledge of the right which it is now contended he waived, we are unable to find that the waiver was either knowing and intelligent.

*Commonwealth v. Williams, supra,* 454 Pa. at 373, 312 A.2d at 600.

Most recently, in *Commonwealth v. Carson,* 503 Pa. 369, 469 A.2d 599 (1983), our high Court had occasion to elaborate upon the meaning of *Williams* and the result is enlightening.

For instance, the Court found that counsel was not ineffective for his failure to advise the appellant, during a jury waiver colloquy, that "the jury would be chosen from 'members of the community' or from his 'peers'[.]" *Id.,* 503 Pa. at 371, 469 A.2d at 600. In all other respects, the colloquy complied with the dictates of *Williams.*

The Court, in holding the colloquy valid and counsel effective, stated:

It must be recognized that *Williams* did not establish a prophylactic rule requiring a new trial for failure of the record to indicate the defendant's knowledge of each and every element of the jury trial right which he was waiving. The focus in *Williams* was, and it remains, whether the waiver was knowing and intelligent, not whether certain talismanic questions were asked and answered. In determining whether this Appellant knowingly and intelligently waived his right to trial by jury, the PCHA court and the Superior Court had before them both the record of the colloquy and the testimony taken at the PCHA hearing from the Appellant and his trial counsel.

We find no error in their determination based on this evidence that the Appellant fully understood the ingredients of a jury trial and his rights thereto, and made a knowing and intelligent waiver of those rights. (Footnote omitted)

*Id.*, 503 Pa. at 372, 469 A.2d at 600.

What we have in *Carson* is the Court's refusal to embrace a *per se* rule that would *ipso facto* invalidate all colloquies that did not comport in every respect with the requirements of *Williams*. In other words, the Court exhibited its endorsement of a "totality of circumstances" approach to assess the validity of a colloquy in the context of a jury trial waiver. Notwithstanding this fact, we read *Carson* to sanction the use of a similar test in reviewing the validity of a guilty plea; especially since both types of colloquies have elements indigenous to *Williams*, i.e., informing the party waiving his right to a jury that the veniremen would be chosen from members of the community, that the verdict be unanimous and that the accused be allowed to participate in the selection of the panel of his peers.

Instantly, as in *Carson*, the party waiving his rights was not advised of an element itemized in *Williams*, yet the colloquy was proper otherwise. Thus, to hold now that the colloquy impaired the appellant's ability to enter a knowing and intelligent plea, in the absence of this one point, would do violence to the teaching of *Williams*, as crystalized by *Carson*. This we cannot do.

Accordingly, upon our review of the record through the spectrum afforded by *Carson*, we find that the appellant entered a knowing and intelligent plea, which conclusion renders impotent his ineffectiveness of counsel argument.

Order affirmed.

HOFFMAN, J., concurs in the result.