482 A.2d 583

**COMMONWEALTH of Pennsylvania**

v.

**Tracy ADAMS, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1984.

Filed Sept. 21, 1984.

Neil W. Price, Johnstown, for appellant.

James A. Nelson, Assistant District Attorney, Ebensburg, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal by the appellant, Tracy Adams, from the judgment of sentence for Rape, Simple Assault and Burglary. We affirm.

The facts, viewed in a light most favorable to the verdict-winner, consist of the following: At approximately 11:00 p.m. on the 7th of April, 1981, Diane Rickabaugh was in her living room watching the news. Her two children were asleep on the third floor. As the news was coming to a close, her dog started to bark and headed toward the back door, which was locked as was the front entrance. Ms. Rickabaugh's fiancee was not home at the time, so she made her way to the back door. As she did so, she passed the door leading to the basement. It opened and she was hit on the back of the head. She fell to the floor but was

not unconscious. Although she could see and hear, she could not shout or move.

After Ms. Rickabaugh was struck, her dog attacked the intruder, but he threw the animal down the cellar steps and slammed the door. He then dragged the victim by the arms into the living room. As the assailant was pulling the victim, she "could ... see him." (N.T. 67) Although "[i]t wasn't ... long[,]" she had "an opportunity to observe this individual['s] ... face and head." *Id.* The victim was dragged to the middle of the living room in front of the television. She lay five feet from the set, which was still on, and about four feet from the lamp that was lit.

At this point, the assailant proceeded to remove the victim's houserobe, nightgown and panties. He then removed his slacks and placed his penis in the victim's vagina. When this occurred, Ms. Rickabaugh passed out. Upon awaking, she found that she had been sexually assaulted with a nightstick kept by her near the front door for protection, and that a white substance, presumed to have been "Dream Whip" because of the empty bowl found next to her, had been placed over her body. She also discovered an empty Miller beer bottle on the floor where she lay.

At 12:15 a.m. the victim's fiancee returned, but, because she was too embarrassed and ashamed, she told him nothing. In fact, she stated she took three showers/baths and was in bed prior to his return. It was only when she got up the next morning with "alot of pains" in her stomach that she called her doctor and told him what had occurred. The doctor directed her to meet him in the emergency room at Memorial Hospital. Upon completion of an examination, a report was prepared by the doctor which read: "In summary, the patient's physical examination was consistent with history of rape with penetration of her vagina."

The hospital personnel, with the victim's arrival, contacted the police. Detective Kiser arrived on the scene and interviewed the victim at the hospital. After her release, he followed her home and she handed over the nightstick, the "Miller's" beer bottle and her nightgown to the detective.

At trial, the attorneys stipulated that the tests conducted on the items proved to be "inconclusive."

While at the victim's home, the detective secured no further information concerning the rapist's description other than he "was a black man." (N.T. 18) It was not until April 13th, while the victim was on her porch looking down the alley to see where her daughter was, that she saw the man who raped her "may be 10 feet down the alley, standing." (N.T. 79) He lived only 4–5 houses away, but she had only seen him once before. She ran back into the house with her daughter and told her why she was so frightened. The daughter told her mother that the man's name was "Tracy." With this, the victim phoned Detective Kiser to inform him that she had just seen her assailant. The detective arrived with a photo array out of which the victim selected the appellant.

At trial, Ms. Rickabaugh was "positive" on the question of identification, and she was "sure" that the appellant was the rapist.

To rebut the Commonwealth's case, the appellant testified, along with a host of alibi and character witnesses, as to his whereabouts on the evening in question.

In particular, the appellant recalled going to bed prior to 11:00 p.m. and having to get up to lend Eugene Peoples $2.00 to go drinking. This lasted from 11:00–11:15 p.m. and was corroborated by Ms. Roxanne Walters, who lived with the appellant at the time, and by Mr. Peoples. Thereafter, the appellant stated he went back to sleep and did not leave his residence for the remainder of the evening. This was also confirmed by Ms. Walters.

Each of the witnesses who testified on behalf of the appellant (e.g., Ms. Walters, Mr. Peoples, Mr. Stevens, Mr. Allen and Reverend McGauley) cited him as a person whose reputation in the community for truthfulness and honesty was "good" or "outstanding."

The trial judge, prior to making his decision, characterized the facts of the assault as "bizarre and unusual." He

also noted that on the critical question of identification it was "not easy to determine. It's a question of credibility." Nonetheless, he concluded that Ms. Rickabaugh had been raped and that, "beyond a reasonable doubt[,] ... the defendant [was] guilty." In doing so, we would like to point out the judge's remarks concerning one of the appellant's witnesses, i.e., Eugene Peoples, who believed the appellant to be innocent. It seems that Peoples testified that the morning following the incident, April 8th, he was outraged to hear from Ms. Rickabaugh's neighbor (Walter Brumbaugh) that the appellant had been accused of rape. Yet, as correctly observed by the judge, the appellant was not accused of committing the offense until the 13th of April. Thus, Peoples' credibility was called into question for this inconsistency, as well as the fact that he had admitted to pleading guilty to burglary on August 6, 1973, and burglary, larceny and receiving stolen goods on May 21, 1973.

As for Ms. Walters, her testimony diverted from that of the appellant in that she testified the appellant barely spoke to the victim when she came to their home in an attempt to give away a puppy. The appellant, on the other hand, remembered that on the same occasion he spoke to the victim for 5–10 minutes at the kitchen table.

On appeal, counsel other than trial counsel (*see Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975)), raises questions concerning: 1) the sufficiency of the evidence; 2) the effectiveness of trial counsel; 3) alleged trial court error in not granting a defense witness immunity; 4) the denial of a motion for a mistrial; and 5) the grant of a new trial because of allegedly after-discovered evidence.

■ Regarding the sufficiency issue, the victim was certain that her assailant had "penetrated" her during the sexual attack. The doctor's report confirmed this contact. Next, the evidence showed that entry into the premises was not with the consent of the victim. Thus, proof was presented establishing the unlawful entry into the premises of another, and, therefrom it could be reasonably inferred,

that it was accomplished for the purpose of committing a crime therein. *Compare Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981).

Having recreated the sexual assault, we believe the victim's "positive" identification of the appellant as the culprit establishes his role in the incident. That the victim gave a scant description ("a black male") of her assailant and that she did not identify the appellant as the party involved until 6 days after the incident go to the weight to be accorded her testimony by the trier of fact. Inasmuch as the trier of fact was free to believe all, part or none of the evidence presented at trial, *Commonwealth v. Arms*, 489 Pa. 35, 413 A.2d 684 (1980), if you couple such a pronouncement with the longstanding law in this Commonwealth that the testimony of one witness, e.g., the prosecutrix, is sufficient to sustain a conviction for an unwarranted sexual attack, *Commonwealth v. Crider*, 240 Pa.Super. 403, 361 A.3d 352 (1976), we find no reason to overturn the verdict entered in this case. *See Commonwealth v. Burak*, 232 Pa.Super. 499, 335 A.2d 820 (1975).

No less can be said of the simple assault conviction, which was a reduction by the court, on appellant's demurrer, from the initial charge of aggravated assault (i.e., the information alleged that the appellant "attempted to cause serious bodily injury to one Diana Rickabaugh by striking her on the head[.]"). The court did so upon its reading of *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), which held that a punch to the nose, in and of itself, does not prove one's intent to inflict serious bodily injury. Suffice it say, albeit the evidence was not sufficient to prove that the injury was serious or that the surrounding circumstances established the intent to inflict serious bodily injury, there was that quantum of proof necessary to show that the assailant attempted to cause bodily injury to Ms. Rickabaugh by striking her upon the head with an object hard enough to almost knock her unconscious. 18 Pa.C. S.A. § 2701. There also was no impropriety in the court finding the appellant guilty of simple assault, even though

he was not specifically charged with such an offense, since it is a lesser included offense of aggravated assault. *See Commonwealth v. Temple,* 258 Pa.Super. 269, 392 A.2d 788 (1978).

In assailing trial counsel's stewardship, appellate counsel alleges that prior counsel from the Public Defender's Office failed to conduct an investigation, interview witnesses or confer with the accused. However, appellate counsel neglects to inform us what, if anything of relevance, an investigation would have uncovered that did not surface at trial. Counsel's assertions that the victim's purported involvement in drugs and an illicit relationship with a Mr. Tollar are not *prima facie* illuminating on the issue of *appellant's assault* of the victim. Stated otherwise, the mere recitation of the "unusual circumstances" of the incident does not enlighten this Court one iota as to what information would have been uncovered if "some independent fact-finding" had occurred.

The appellate counsel's protestations concerning witness interviewing is equally ambivalent. He states that the appellant sought to get trial counsel in touch with witnesses, but trial counsel refused to see them. However, nowhere are we told the names of these witnesses or what they would have recounted to counsel if he had spoken to them.

Next, on the question of the amount of time spent by trial counsel with the appellant in conference, we have repeatedly observed that mere shortness of time spent conferring with a client does not constitute a basis for a finding of ineffectiveness. *Commonwealth v. Owens,* 454 Pa. 268, 312 A.2d 378 (1973). Rather, it is what is able to be accomplished in the time available that is the benchmark against which the "effectiveness/preparedness" of counsel is measured. *Commonwealth v. Fleming,* 332 Pa.Super. 118, 480 A.2d 1214 (1984). Here, even appellate counsel concedes in his brief to us that trial counsel spent about one-half hour talking with the appellant. Although we have

no way of knowing the accuracy of this statement, we can say that appellant was afforded a vigorous defense and competent representation at trial. For example, counsel was successful in having the charge of aggravated assault, at the demurrer stage, reduced to simple assault. Likewise, counsel was able to have a charge of involuntary deviate sexual intercourse dismissed. Also, his cross-examinations were lengthy and probing. Accordingly, counsel was nothing less than prepared to defend the accused.

▉ On the subject of trial counsel's failure to file a pretrial motion to suppress the photographic array, we note that counsel will not be deemed ineffective if the claim raised has no arguable merit. *See Commonwealth v. Carrillo*, 319 Pa.Super. 115, 465 A.2d 1256 (1983), petition for allowance of appeal denied January 16, 1984.

Albeit counsel did not seek to suppress the photos, at trial the court heard argument from both sides on the issue and concluded that, inasmuch as the array was not suggestive, if a motion to suppress had been filed, it would not have been successful. Our review of the evidence comports with the result reached by the trial court—the 8 photographs fairly depict a group of men with characteristics closely resembling those possessed by the accused. Thus, trial counsel will not be deemed ineffective for failing to file a useless motion. *See Commonwealth v. Carrillo, supra.*

▉ Appellate counsel has also raised claims concerning the effectiveness with which trial counsel cross-examined Ms. Rickabaugh and questioned the appellant on direct, as well as his failure to obtain immunity from the court to allow a Mr. Tollar to testify as to an alleged amorous relationship with the victim and his use of drugs with the victim, or to require that the victim undergo psychiatric examination because of her purported use of drugs. We have reviewed the aforesaid and find them to be totally without arguable merit. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

■ In a similar vein, we find that appellate counsel's argument that trial counsel fell short of adequately representing the appellant when he failed to demand a trial by jury for his client is belied by the record. Our review of the jury trial waiver colloquy evinces an intent on the part of the accused to waive such right voluntarily and intelligently. *See Commonwealth v. Carson*, 503 Pa. 369, 469 A.2d 599 (1983); *Commonwealth v. Payne*, 327 Pa.Super. 139, 475 A.2d 137 (1984).

■ We earlier mentioned that the appellant's counsel questioned the propriety of the trial court's refusal to grant trial counsel's request for a mistrial. Since the mistrial issue is intertwined with the complained-of suggestiveness of the photographs, our determination supportive of the trial court's finding that, in fact, they were not suggestive dispenses with the need to address the matter further.

Lastly, we wish to respond to appellate counsel's request for an evidentiary hearing. He seeks one on the basis that, "a continuing investigation conducted by professional investigators working for ... present counsel" has uncovered evidence which "tends to exculpate" the appellant.

■ Appellate counsel has reproduced the typed affidavits of four individuals which he considers to be of sufficient magnitude to warrant an evidentiary hearing to delve further into the matter. We disagree.

The first affidavit is that of Deborah Ondo, a once close friend of the victim and a Vincentian Sister of Charity in Pittsburgh. She recounts in her statement that the victim had related to her other instances of assault that could never be verified. Thus, she, although not knowing the appellant prior to the incident, could not "believe he was capable of this," and she disbelieved the victim's story.

The second affidavit is that of Thomas Severns, a convicted criminal who purchased, allegedly, drugs from the victim upon his release from jail after the incident.

Joan Weaver was the third affiant who supposedly knew the victim to be a drug user and "strongly suspect[ed]" Steve Tollar to be "a secret boyfriend of RICKABAUGH."

The last sworn statement was that of a Paul Martin, who wrote that he was a friend of the victim and her fiancee. Although he gave his personal opinion that he "came to disbelieve that any crime really took place," nonetheless he did admit that the victim, on the evening of the assault, was "upset about being attacked ... by a big and husky black man[.]"

Under the standard followed in this jurisdiction to assess whether "after-discovered" evidence has been produced to justify post-conviction relief, *see Commonwealth v. Johnson*, 291 Pa.Super. 566, 436 A.2d 645 (1981), the aforecited excerpts fall short of the mark. Consequently, we see no need to remand for an evidentiary hearing. On the contrary, upon a review of all of the claims proffered by counsel for the appellant, we are compelled to affirm the ruling of the court below.

Judgment of sentence affirmed.