J-A31041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GREGORY E. MORGAN | |
| Appellant | No. 772 EDA 2015 |

Appeal from the Judgment of Sentence October 16, 2014
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0000586-2013

BEFORE: BENDER, P.J.E., MOULTON , J., and FITZGERALD, J.[*]

MEMORANDUM BY FITZGERALD, J.: **FILED JUNE 09, 2017**

Appellant, Gregory Morgan, appeals from the judgment of sentence of eight to sixteen years' imprisonment imposed after a jury found him guilty of robbery,[1] aggravated assault—causing serious bodily injury,[2] and possession of an instrument of crime ("PIC").[3] Appellant argues that (1) the evidence was insufficient to sustain his conviction for aggravated assault, (2) the trial court erred in utilizing an offense gravity score ("OGS") for robbery, and (3)

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 2702(a)(1).

[3] 18 Pa.C.S. § 907(a).

the trial court erred by applying the deadly weapons enhancement[4] ("DWE/used"). We affirm.

The trial court summarized the evidence adduced during trial as follows:

> On November 11, 2012, around 6:00 pm, Nicole Poole dropped off Johnnie Moore ["Complainant"] at the comer of North 17th Street and West Westmoreland Street. [Complainant] then walked to his apartment, approximately two blocks away, located at 1721 W Tioga Street. As [Complainant] exited the vehicle, [Appellant] called out to him from the other side of the intersection, "Yo yo, yo, can I talk to you for a minute?"
>
> [Complainant] ignored [Appellant] and proceeded to his apartment. Moments later, when he arrived at the front of his apartment building, [Appellant] reappeared from an abandoned lot across the street and approached him. As [Appellant] walked towards [Complainant], he had his hand in his pocket and "bumped" [Complainant] while he was on the sidewalk in front of the apartment building. [Appellant] and [Complainant] exchanged words face-to-face. As they argued, [Complainant] backed away from [Appellant] and walked up the first set of stairs. [Appellant] followed [Complainant] up the stairs. When they reached the first landing platform below the porch stairs, [Appellant] drew a handgun and demanded [Complainant's] cell phone as well as to be let inside the house. [Appellant] threatened to shoot [Complainant] if he declined. [Complainant] refused, turned away from [Appellant], and proceeded up the second set of stairs to the porch.
>
> When [Complainant] was midway up the porch stairs, he heard several "clicking" noises from the direction of [Appellant] who was still below on the platform. [Complainant] reacted to the clicking noises by turning around to face [Appellant], who then said, "I'm fucking

_____
[4] 204 Pa. Code § 303.10(a)(2)(iii).

- 2 -

with you." [Complainant] continued to walk up the stairs to his apartment. At the very moment that he reached the porch entrance and inserted his key to unlock the door, [Complainant] heard multiple gunshots from behind him.

In response to the gunshots, [Complainant] turned and tackled [Appellant]. During the ensuing fight, [Appellant] kicked [Complainant] and hit him over the head with a handgun. Eventually the fight ended after they both rolled down the stairs, past the landing, and onto the sidewalk, at which point [Complainant] took control of [Appellant's] gun and shot at him. It was only after the confrontation was over that [Complainant] realized that he suffered wounds to his head, right shoulder, and ear.

[Complainant] then entered his home, hid [Appellant's] handgun in his home and called the police. Officer Rosemary King was the first officer who responded to a radio call at 6:20 pm for a person with a gun. She arrived at the 1700 block of Tioga Street within five minutes and observed [Complainant] bleeding from his earlobe. Detective Craig Coulter arrived on the scene within an hour after being notified of the shooting on the sidewalk in front of the apartment building. Detective Coulter observed a single Nike shoe and bloodstains[fn1] that belonged to [Appellant]. He also observed a bullet hole in the porch window and another bullet hole inside the vestibule doorway outside of a downstairs apartment. The day after the shooting, [Complainant] told Detective Coulter that he hid [Appellant's] handgun inside his apartment. After searching the apartment, police recovered a .22 caliber revolver and two rifles from inside [Complainant's] closet.

---

[fn1]David Hawkins is a forensic scientist with the Philadelphia Police Department's Office of Forensic Science DNA Laboratory. He analyzed DNA samples collected from the sidewalk blood, the Nike shoe, [Complainant], and [Appellant]. In his expert report and testimony during trial, Hawkins concluded that the DNA of the bloodstain recovered from the crime scene sidewalk was consistent with originating from

[Complainant].  He further excluded the possibility of [Apppellant] as a contributor.

_____

Emergency room personnel at Temple Hospital treated [Complainant] for multiple gunshot wounds[ after his admission at 6:48 on November 11, 2012].  The radiology report indicated that two BB pellets were lodged in [Complainant's] scalp and that [Complainant] suffered a third head wound.  Officer Jesus Cruz, of the [Philadelphia] Firearms Identification Unit, testified that BBs produce smaller holes on impact compared with .22 caliber bullets.  On the night of the shooting, [Complainant] wore a black hooded sweatshirt and two long-sleeve t-shirts.  Each layer of [Complainant's] clothing contained puncture holes on the right shoulder side.  At trial, Detective Coulter described the holes as "small" and testified that there were bloodstains on two pieces of [Complainant's] clothing.

After [Complainant] was discharged from the hospital, he gave a statement to detectives wherein he identified [Appellant] as the shooter by circling [Appellant's] photo in a photo array on the following day.  Poole also identified [Appellant] from a photo array.  In addition to these identifications, DNA extracted from the Nike shoe confirmed [Appellant] was at the crime scene because the mixture detected an origination that included [Appellant's] DNA profile.

The Commonwealth and [Appellant] stipulated that [Complainant] suffered five gunshot wounds: one to his right shoulder, another to his right underarm, and three to his head.  [Complainant's] injuries were sufficiently serious to require emergency treatment at the hospital.  In the two months that followed the shooting, [Complainant] returned to the hospital to have his sutures removed and for head pain that had yet to subdue.  Although [Complainant] required surgery for his gunshot injuries, he declined to have the surgery due to not having medical insurance.  Two years after the shooting, [Complainant] testified that—as a result of the shooting—he gets frequent migraines and is nervous in crowds.

Trial Ct. Op., 12/31/15, at 1-3.

The jury found Appellant guilty of aggravated assault—causing serious bodily injury, robbery and PIC. However, the jury specifically found that Appellant did not possess a firearm.[5] The jury also acquitted Appellant of attempted murder, aggravated assault—causing bodily injury with a deadly weapon, and carrying a firearm in public in Philadelphia.[6]

At the sentencing on October 16, 2014, the trial court determined that Appellant's prior record score was two. The trial court, over Appellant's objections, concluded that (1) the OGS was twelve for robbery inflicting serious bodily injury and (2) the DWE/used applied based on Appellant's use of a BB gun.[7] The trial court thus sentenced Appellant to an enhanced standard range sentence of 96 to 192 months' imprisonment for robbery, with concurrent sentences of 84 to 168 months' imprisonment for aggravated assault and 12 to 24 months' imprisonment for PIC.[8] *Id.* at 43.

---

[5] The jury issued this finding in response to an interrogatory regarding the former mandatory sentence for visibly possessing a firearm. *See* 42 Pa.C.S. § 9712 (held unconstitutional in *Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. 2014)).

[6] The trial court separately directed a not guilty verdict on the charge of carrying a firearm without a license.

[7] The trial court calculated Appellant's sentencing guidelines for robbery as seventy-eight to ninety-six months (+/-12), based on a prior record score of two, and OGS of twelve, and the DWE/used matrix.

[8] Additionally, the trial court sentenced Appellant to a consecutive term of one to two years' imprisonment for an unrelated drug conviction.

On October 27, 2014, Appellant filed post-sentence motions, which were denied by operation of law on February 24, 2015. On March 17, 2015, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this appeal, Appellant raises three issues:

1. Was not the evidence legally insufficient to find [A]ppellant guilty beyond a reasonable doubt of aggravated assault—causing serious bodily injury, where the Commonwealth failed to establish beyond a reasonable doubt that the complainant suffered serious bodily injury?

2. Did not the [trial] court erroneously calculate an offense gravity score of [twelve] for robbery rather than [ten], where the jury's verdict was ambiguous as to whether [A]ppellant threatened or inflicted serious bodily injury upon the complainant?

3. Did not the [trial] court abuse its discretion by applying the [DWE] to the charges of robbery and aggravated assault, where the jury specifically found [A]ppellant did not commit those crimes while visibly possessing a firearm, where the jury found [A]ppellant not guilty of assault with a deadly weapon and all gun charges, and where no evidence was presented that the instrument used by [A]ppellant constituted a deadly weapon?

Appellant's Brief at 3.

Appellant first argues that the evidence was insufficient to sustain his conviction for aggravated assault due to the Commonwealth's failure to prove that Complainant suffered serious bodily injury. Appellant acknowledges that Complainant "suffered substantial pain" and an impairment of his physical condition, which could constitute "bodily injury." *Id.* at 24. However, he asserts that "there was no proof here that

[Complainant's] injuries rose to the level of injuries that create a substantial risk of death or cause permanent disfigurement or protracted impairment of any bodily member or organ" required to sustain the finding that Complainant suffered "serious bodily injury." *Id.* We disagree.

It is well settled that

> [t]he standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial . . . in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016).

Here, the jury found Appellant guilty of aggravated assault—causing serious bodily injury.[9]  "A person is guilty of aggravated assault if he . . . causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S. § 2702 (a)(1).  The Crimes Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301.  "Bodily injury" means "impairment of physical condition or substantial pain."  *Id.*

Courts have found serious bodily injury when the victim has undergone hospitalization or suffered loss of bodily function for a protracted time period.  *See Commonwealth v. Burton*, 2 A.3d 598, 604-05 (Pa. Super. 2010) (*en banc*) (one punch hospitalized victim, risked death due to brain trauma, two facial fractures and two spinal fractures); *Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa. Super. 1997) (victim's jaw "wired shut for six weeks during which he could only ingest through a straw");

_____

[9] It is well settled that Section 2702(a)(1) permits the Commonwealth to prove aggravated assault based on an attempt to cause serious bodily injury **or** the infliction of serious bodily injury.  *See Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012).  In the present case, however, the jury was instructed only on the elements of aggravated assault—causing serious bodily injury.  The jury was not asked to consider whether Appellant attempted to cause serious bodily injury.  Therefore, we do not consider whether the evidence was sufficient to prove aggravated assault—attempting to cause serious bodily injury.

*Commonwealth v. Cassidy*, 668 A.2d 1143, 1145 (Pa. Super. 1995) (victim faded in and out of consciousness, was hospitalized for two days and had to wear body brace for two months); *Commonwealth v. Phillips,* 410 A.2d 832, 834 (Pa. Super. 1979) (gunshot wound to leg, requiring two week stay in hospital and resulting in inability to walk for one month). However, less severe injuries, or injuries of shorter duration, do not constitute serious bodily injury. *See Commonwealth v. Adams,* 482 A.2d 583, 585, 587 (Pa. Super. 1984) (evidence that victim was struck on the head by door, knocking her to floor but not unconscious, insufficient to prove serious bodily injury); *Commonwealth v. Benaglio,* 385 A.2d 544, 546 (Pa. Super. 1978) (bump on head not serious bodily injury). *But see Commonwealth v. Caterino*, 678 A.2d 389, 392-93 (Pa. Super. 1996) (evidence of broken nose, in conjunction with severed artery that could have resulted in death without three hours of emergency medical attention, constituted serious bodily injury).

Here, Appellant fired a weapon at Complainant five times at very close range. Two of the projectiles lodged in Complainant's head, and Coomplainant suffered a third head wound. Complainant required emergency hospital treatment. Complainant testified that he was told he needed surgery for his skull, but did not undergo surgery because he did not have insurance. Complainant stated that there was "a fragment still in [his] skull." N.T., 7/29/14, at 78. The jury further heard that Complainant

returned to the hospital two months after the incident to have sutures removed and continued to complain of pain. Complainant began suffering frequent migraine headaches, which he did not have before the incident. This evidence, when viewed in a light most favorable to the Commonwealth, established more than substantial pain, and a reasonable juror could find "a protracted impairment of the function of a bodily member or organ." *See* 18 Pa.C.S. § 2301. Accordingly, we affirm Appellant's conviction for aggravated assault—causing serious bodily injury.

Appellant's next two arguments challenge the discretionary aspects of the sentence. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) (addressing claim that DWE did not apply as a discretionary aspect of sentence challenge); *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016) (addressing claims that trial court utilized wrong OGS as a discretionary aspect of sentence challenge).

> It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from

> is not appropriate under the Sentencing Code, 42
> Pa.C.S. § 9781(b).

**Williams**, 151 A.3d at 625 (some citations omitted). Appellant has preserved his claims for review, and his claims raise substantial questions warranting appellate review. **Buterbaugh**, 91 A.3d at 1266; **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*).[10]

Appellant contends the trial court erroneously calculated his OGS for robbery. He claims that his OGS for robbery should have been ten instead of twelve because the jury's verdict did not conclusively determine whether he threatened or inflicted serious bodily injury upon Complainant. He further contends that the robbery and aggravated assault should be construed as separate acts and that Complainant's injuries resulted from the aggravated assault, not the robbery.

The Crimes Code defines robbery in relevant part as follows: "A person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another [or] threatens another with or intentionally puts him in fear of immediate serious bodily injury . . . ." 18 Pa.C.S. § 3701(a)(1)(i-ii). The definition of "serious bodily injury" is the same under the robbery statute as it is under the aggravated assault

---

[10] Although both of Appellant's sentencing claims go to the discretionary aspects of the sentence they involve questions of law, which we review *de novo*. **See Buterbaugh**, 91 A.3d at 1266; **Commonwealth v. Sunealitis**, 153 A.3d 414, 421 (Pa. Super. 2016) (citation omitted);

statute. **See Valentine**, 101 A.3d at 807 (Pa. Super. 2014) (citing definition of serious bodily injury in 18 Pa.C.S. § 2301 in appeal from robbery conviction).

The Sentencing Guidelines prescribe an OGS for robbery as twelve when serious bodily injury is inflicted, but ten when serious bodily injury is only threatened. **See** 204 Pa. Code § 303.15. We have held above, however, that the evidence was sufficient to prove that Appellant caused serious bodily injury to Complainant.

Moreover, Appellant's attempt to disaggregate the robbery from the aggravated assault warrants no relief. The use of force "in the course of committing a theft" may occur "in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. § 3701(a)(2). Instantly, the record supports the trial court's finding that the robbery and the aggravated assault constituted a single episode and that Appellant caused serious bodily injury in an attempted theft or flight from an attempted theft.[11] Consequently, we affirm the trial court's use of the OGS of twelve for the robbery.

Appellant, in his final argument, asserts that the trial court erred in concluding that he used a deadly weapon for the purposes of the DWE. Appellant notes that the jury acquitted him of aggravated assault—causing

---

[11] We add that aggravated assault and robbery do not merge. **See Commonwealth v. Payne**, 868 A.2d 1257, 1263 (Pa. Super. 2005).

bodily injury with a deadly weapon and asserts that the trial court heard no evidence that a BB gun should be considered a deadly weapon. Appellant's Brief at 35-36. We are constrained to disagree.

The Sentencing Guidelines provide:

> When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
> ***
>
> (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(a)(2)(iii). The factual findings triggering an enhancement of the suggested minimum sentence under the Section 303.10 require proof by a preponderance of the evidence. *Commonwealth v. McKeithan*, 504 A.2d 294, 298-99 (Pa. Super. 1986). "Items not normally considered deadly weapons can take on such status based upon their use under the circumstances." *Commonwealth v. Rhoades*, 8 A.3d 912, 917 (Pa. Super. 2010) (citation omitted) (holding that "glass bottle forcibly inserted into a body cavity" during sexual assault constituted deadly weapon).

We are mindful that the jury here made a specific finding that Appellant did not possess a firearm and acquitted him of aggravated assault—causing bodily injury with a deadly weapon. However, the

- 13 -

Sentencing Guidelines permitted the trial court to determine by a preponderance of the evidence that Appellant's BB gun was an instrumentality capable of producing death or serious bodily injury. *See Rhoades*, 8 A.3d at 917. In so doing, it properly considered the manner in which Appellant used the BB gun—that is, firing numerous projectiles at Complainant's head from a close range—as well as the fact that Complainant suffered serious bodily injury. Thus, we discern no error in the trial court's conclusion that Appellant's use of BB gun under the circumstances of this case constituted the use of an instrumentality capable of causing serious bodily injury. Accordingly, we affirm the trial court's application of the DWE/used.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017