J-S14043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ARTHUR WHITAKER JR. | |
| Appellant | No. 1699 EDA 2017 |

Appeal from the Judgment of Sentence April 18, 2017
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-00040301-2016

BEFORE:  OTT, J., MCLAUGLIN, J., and RANSOM, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 05, 2018**

Appellant, Arthur Whitaker, Jr., appeals from the judgment of sentence of three to six years of incarceration, imposed April 18, 2017, following a jury trial resulting in his conviction for terroristic threats, simple assault, and harassment.[1]  We affirm.

We adopt the following statement of facts from the trial court's opinion, which in turn is supported by the record.  ***See*** Trial Court Opinion (TCO), 7/5/17, at 3-10.  In September of 2016, Teesha Benton and Appellant were involved in a romantic relationship and lived together with their children in Allentown, Lehigh County, Pennsylvania.  On September 20, 2016, around

_____

[1] 18 Pa.C.S. §§ 2706(a)(1), 2701(a)(1), and 2709(a)(1), respectively. Following the conclusion of the jury trial, the trial court found Appellant guilty of the single count of harassment, graded as a summary offense.

_____

* Retired Senior Judge assigned to the Superior Court.

10:00 p.m., the two went to a club to celebrate a family member's birthday. After drinking and dancing, Appellant and Ms. Benton got into a verbal altercation on the dance floor and parted angrily. Ms. Benton left the club, found Appellant in her car, and got into the car with him. Appellant slapped her across the face and, after Ms. Benton got out of the car, drove away. Ms. Benton received a ride to another location from a friend and found Appellant there. Appellant began yelling at her, and the two resumed their argument. Appellant again left in Ms. Benton's vehicle, and Ms. Benton returned home with assistance from a family member.

Once home, Ms. Benton checked on her children and fell asleep on the living room couch. She was awaked by Appellant, who accused her of lying to him. Appellant went into the kitchen and grabbed a knife, which he held against Ms. Benton's throat. He told her to stop lying to him and accused her of hiding someone in the house. Appellant pulled Ms. Benton from the couch and pushed her towards the basement, slashing several holes in her blouse. Appellant poked her with the knife and told her "it was about to get bloody." Appellant was unable to find another person in the house.

Ms. Benton tried to calm Appellant, pleading with him not to wake the children. Appellant began breaking apart pencils and asked Ms. Benton how they would feel in her neck. Crowding Ms. Benton into the living room, Appellant pushed her down, pointed the knife at her head, and again accused her of lying. When Appellant went into the kitchen, Ms. Benton attempted to flee, but Appellant heard her and stopped her. He placed his hands around

- 2 -

Ms. Benton's neck and began to choke her, forcing her to the floor. Despite her struggles, she could not dislodge him. When Ms. Benton attempted to stand up, Appellant smacked her across the face, hurting her. After Appellant again went into the kitchen, Ms. Benton was finally able to flee, although Appellant had taken her cell phone.

Ms. Benton fled to a nearby gas station, wearing only one shoe. There, she was able to call police. Sergeant Louis Collins of the Allentown Police Department responded to her call and observed her excited state, tattered clothing, single shoe, and redness around her neck. Other officers responded to the residence, where Appellant was asleep on the couch in the living room. He responded to commands to wake up and stand, and he did not appear intoxicated or injured. He was arrested and removed from the residence.

Officers took Ms. Benton's statement and photographs of her injuries. The knife used in the attack was taken into evidence, and Ms. Benton was advised to obtain a protection from abuse order ("PFA"), which she did on the following morning after taking her children to school. Ms. Benton then went to the emergency room of Sacred Heart Hospital, where she was examined. She suffered from bruising to her face and eyelids, abrasions and bruising on her neck and left breast, a bruised abdomen, and an injured shoulder.

The matter proceeded to trial before a jury on March 7, 2017, and on March 8, 2017, the jury found Appellant not guilty of aggravated assault,[2] but

---

[2] 18 Pa.C.S. § 2702.

guilty of simple assault and terroristic threats. The trial court found Appellant guilty of summary harassment. On April 18, 2017, Appellant received an aggregate sentence of three to six years of incarceration, a standard range sentence for which the court had the benefit of a pre-sentence investigation report. He filed a post sentence motion seeking reconsideration of his sentence and a motion for a new trial based on the weight of the evidence, both of which were denied.

Appellant timely appealed and both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following questions for our review:

A. Whether the evidence was sufficient to sustain [Appellant's] convictions for simple assault and terroristic threats when the defendant was intoxicated or otherwise may not have been able to form the criminal intent?

B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was properly convicted of simple assault and terroristic threats?

C. Whether the lower court abused its discretion by imposing sentences which were manifestly unreasonable as the court failed to fully state its reasons for the imposition of the sentences or otherwise failed to review all appropriate factors as required by law?

Appellant's Brief at 8-9 (unnecessary capitalization and lower court actions omitted).

First, Appellant contends that the evidence was insufficient to support the jury's verdicts.[3]  *See* Appellant's Brief at 16.  Essentially, Appellant contends that because he "acted in a crazy manner," "made comments that were clearly nonsensical," and because testimony established that he had been drinking prior to the assault, the evidence rebutted any presumption or finding that he acted intentionally, knowingly, or recklessly in his "physical interactions" with Ms. Benton, either to commit assault or make threats to commit a crime.  *Id.* at 17-18.

We review a challenge to the sufficiency of the evidence as follows.

> In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt.  The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

Initially, we note that it is well-settled that voluntary intoxication is not a defense to a criminal charge.  *See Commonwealth v. Ellis*, 581 A.2d 595, 604-05 (Pa. Super. 1990) (noting an exception for the charge of murder); *see also* 18 Pa.C.S. § 308.  Evidence of the defendant's voluntary intoxication may not be introduced to negate the element of intent.  *Id.*  Accordingly, we

---

[3] It does not appear that Appellant challenges his conviction for harassment.

may reject Appellant's arguments that it is reasonable to believe he was "heavily intoxicated and out of his mind during the entire incident because of the alcohol." *See* Appellant's Brief at 18. Nevertheless, we will examine the sufficiency of the evidence to support his convictions.

The elements of simple assault are defined, in relevant part, as follows:

(a) Offense defined.-- Except as provided under section 2702 (related to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; . . .

*See* 18 Pa.C.S. § 2701. "Bodily injury" is defined by the crimes code as "impairment of physical condition or substantial pain." *See* 18 Pa.C.S. § 2301. "The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994).

We have previously observed that

in considering the spectrum of assaultive behavior, convictions for simple assault have been upheld where the behavior is more clearly criminal. *See, e.g., Commonwealth v. Jorgenson*, 341 Pa.Super. 550, 492 A.2d 2 (1985) (affirming conviction for simple assault where victim was struck twice across the face while refusing sexual advances); *Commonwealth v. Adams*, 333 Pa.Super. 312, 482 A.2d 583 (1984) (affirming conviction for simple assault where victim was struck in the head with an object hard enough to almost knock her unconscious); *Commonwealth v. Richardson*, 431 Pa.Super. 496, 636 A.2d 1195 (1994)

- 6 -

(affirming conviction for simple assault for punching police officer in the face).

*In re M.H.*, 758 A.2d 1249, 1252 (Pa. Super. 2000) (finding evidence sufficient to support simple assault for grabbing the victim's arm and pushing her against a wall, resulting in bruises).

Here, the evidence established that throughout the course of a physical altercation, Appellant slapped the victim in the face several times, punched, choked, and stabbed at the victim with a butcher knife. She suffered from bruises, abrasions, and a sore shoulder as a result of Appellant's actions. Accordingly, the circumstances reasonably suggested that Appellant intended to cause injury, and the evidence was sufficient to support his conviction for simple assault. *See Richardson*, 636 A.2d at 1196; *Diggs*, 949 A.2d at 877.

The crime of terroristic threats is defined in relevant part as follows:

(a) Offense defined.—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another . . .

*See* 18 Pa.C.S. § 2706.

Additionally,

the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

*Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003) (internal citations and quotations omitted).

Here, as noted before, voluntary intoxication may not be introduced to negate the intent element of a crime. *Ellis*, 581 A.2d at 604-05. Further, the evidence was more than sufficient to show that Appellant made threats to commit a crime of violence with the intent to terrorize when he 1) poked at Ms. Benton with a knife while telling her "it was about to get bloody" and 2) breaking apart pencils and asking Ms. Benton how they would feel in her neck. Both of these actions, combined with Appellant's words, communicate a threat to commit a crime of violence and were made with the intent to terrorize Ms. Benton. *Reynolds*, 835 A.2d at 730. Accordingly, the evidence was sufficient to sustain Appellant's conviction for terroristic threats. *Diggs*, 949 A.2d at 877.

Next, Appellant contends that the verdict was against the weight of the evidence. *See* Appellant's Brief at 18. However, Appellant essentially recouches his sufficiency claim as a weight claim, arguing that the trial court, in its review of the jury's decision, failed to take into consideration the evidence that Appellant acted without a clear and deliberate mind in his actions made the night of the assault. *See* Appellant's Brief at 19. He contends that the jury was given "clear evidence" based upon his state of mind and level of intoxication that he was not responsible for his actions. *See* Appellant's Brief at 19-20.

The law regarding weight of the evidence claims is well-settled.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted); *see also Commonwealth v. Hankerson*, 118 A.3d 415, 420 (Pa. Super. 2015) (noting that this Court may not re-assess the credibility of a witness' testimony when ruling on a weight of the evidence claim).

As noted, *supra*, voluntary intoxication does not negate the intent element of a crime. *Ellis*, 581 A.2d at 604-05. Further, the jury in their role as factfinder heard, considered, and rejected Appellant's arguments regarding his state of mind the night of the assault. Thus, we discern no abuse of the trial court's discretion in rejecting Appellant's weight claim. *See Houser*, 18 A.3d at 1136.

Appellant's sole remaining issue is a challenge to the discretionary aspects of his sentence, which must be considered a petition for permission to appeal. *See Commonwealth v. Coulverson*, 34 A.3d 135, 142 (Pa. Super. 2011); *see also* Pa.R.A.P. 2119(f). This Court conducts a four-part

analysis to determine: (1) whether Appellant has timely filed a notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b). **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015) (citation omitted).

Appellant timely filed a notice of appeal and filed a motion for reconsideration of his sentence. In the motion, Appellant admitted he had been sentenced in the standard range and that his prior record score warranted a state sentence. **See** Mot. for Recons., 4/21/17, ¶¶ 1-11. However, he contended that his sentence was excessive and requested that the court run the sentences concurrent instead of consecutive. **Id.** Nowhere in his motion did he aver that the court failed to give meaningful consideration to various factors other than the seriousness of the offense or that it failed to adequately state its reasons for the sentence, as he now claims before this Court. **See** Appellant's Brief at 13. Accordingly, Appellant has not preserved his issue for purposes of appeal. **See Leatherby**, 116 A.3d at 83.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/5/18